# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

---

(No. 12289.—Judgment affirmed.)

JAMES H. KNIGHT, Admr. Defendant in Error, *vs.* EDGAR F. SENEY *et al.* Plaintiffs in Error.

*Opinion filed October 27, 1919—Rehearing denied Dec. 3, 1919.*

1. TROVER—*trover will lie for conversion of bills, notes and securities.* Trover will lie for the wrongful conversion of bills of exchange, promissory notes, bonds or other securities for the payment of money.

2. SAME—*what is conversion.* Any unauthorized act by which an owner is deprived of his property permanently or indefinitely or the exercise of dominion over property inconsistent with the rights of the owner is a conversion.

3. SAME—*what constitutes conversion of securities by bailees.* Where a bailor delivers securities to bailees, to be sold or otherwise dealt with as the bailor may direct or to be returned within a time mentioned in receipts given by the bailees, a failure to return the securities and the disposition of them without the authority of the bailor is a wrongful conversion.

4. SAME—*when contracts of intestate are admissible in suit in trover by administrator.* Where an administrator is suing for the wrongful conversion of securities of his intestate after he had delivered them to the defendants by way of bailment, contracts of the deceased with the defendants under the terms of which she held the

securities are admissible for the purpose of establishing the character and value of the deceased's interest in the property converted.

5. BAILMENTS—*bailee's authority is limited by terms of bailment contract.* The authority of a bailee is limited by the terms of the contract by which he acquired the possession of the property, and if he uses the property for a different purpose from that for which he was authorized, or in a different manner or for a longer time, he will be held liable for any loss even through an unavoidable accident.

6. CONTRACTS—*when contract evidences a loan and not the purchase of securities.* Where a brokerage firm agrees to invest a certain amount of its client's money for five years, the client agreeing to hold, subject to the full control of the firm, all securities purchased, and the partnership agreeing to pay her ten per cent per year for the use of the money and to re-pay the money invested upon termination of the agreement, the contract evidences a loan at a usurious rate of interest and not the purchase and sale of securities.

7. EXECUTORS AND ADMINISTRATORS—*when rule that indebtedness of intestate cannot be set off in action by administrator does not apply.* The rule that in an action to recover money accruing to an administrator after the death of an intestate the defendant cannot set off a debt due from the intestate in her lifetime does not apply where the administrator sues to recover the value of the deceased's interest in securities wrongfully converted by the defendants, and in ascertaining the value of such interest, payments made to the intestate in her lifetime, including usurious interest, are properly taken into consideration.

8. SAME—*administrator may sue for a conversion of securities belonging to his estate—waiver.* Where an administrator delivers to bailees securities held by his intestate in her lifetime and the bailees wrongfully convert the securities to their own use the administrator may maintain an action of trover in his name as administrator, and the fact that he has received payments from the bailees according to their contracts with the deceased, by the terms of which she acquired the securities, does not waive the tort or affect the administrator's right to sue for the conversion.

9. PRACTICE—*Appellate Court may allow plaintiff to remit part of the verdict and enter final judgment.* Where the constitutional right to a jury trial has not been waived, the Appellate Court has no power, on reversing a judgment at law, to determine the cause on the merits and enter final judgment, but where the only ground for a new trial is excessive damages, the plaintiff may be given his election to obviate the objection by remitting a part of the verdict or take a new trial.

10. SAME—*when defendant cannot complain that the Appellate Court entered final judgment.* Where the Appellate Court finds that the plaintiff has recovered an excessive verdict and enters a final judgment reducing the amount, the defendant cannot complain that the Appellate Court did not give the plaintiff his election to remit part of the verdict or take a new trial.

11. EVIDENCE—*what question cannot be asked a witness to impeach defendants' reputation for truth.* In an action of trover a party who is called as a witness to impeach the defendants' reputation for truth and veracity may be asked on cross-examination if he had had trouble or litigation with the defendants and if he entertained an unfriendly feeling toward them, but he should not be asked to explain the merits or nature of the litigation.

12. SAME—*when admission of improper evidence will not require reversal of judgment.* A judgment should not be reversed for an error in the admission of the testimony of a witness to impeach the defendants' reputation for truth and veracity where there is no apparent reason to expect a different result if a new trial is had excluding such improper evidence.

WRIT OF ERROR to the Second Branch Appellate Court for the First District;—heard in that court on writ of error to the Municipal Court of Chicago; the Hon. HOSEA W. WELLS, Judge, presiding.

ADAMS, CREWS, BOBB & WESCOTT, for plaintiffs in error.

WINSTON, STRAWN & SHAW, (SILAS H. STRAWN, EDWARD W. EVERETT, and R. S. TUTHILL, JR., of counsel,) for defendant in error.

Per CURIAM: In an action of trover in the municipal court of Chicago, James H. Knight, as administrator of the estate of Adele Knight, deceased, recovered against Edgar F. Seney and Rowland T. Rogers, a partnership doing business as Seney, Rogers & Co., a judgment for $62,319.76 for the conversion of certain securities for the payment of money. Seney, Rogers & Co. prosecuted a writ of error from the Appellate Court, which found that there was no

error in the record except that the amount of the verdict was excessive, and proceeded to correct this error by deducting $24,066.53. The judgment was affirmed for the remainder, $38,253.23. The court granted a certificate of importance, and Seney, Rogers & Co. have sued out a writ of error to review the judgment of the Appellate Court. The defendant in error has assigned cross-errors.

The defendant in error, as administrator of the estate of Mrs. Knight, was in possession of certain securities which had been delivered to her by the plaintiffs in error upon an agreement which will be referred to hereafter. On July 9 and July 12, 1912, and February 7, 1913, the defendant in error delivered to the plaintiffs in error some of these securities, taking for them. receipts, of the first of which the following is a copy:

"Received in trust from Jas. H. Knight, bailor, Victoria bonds $2600, People's Hospital bonds $7400, and we hereby undertake to hold said property of the said Jas. H. Knight, and subject to his order, for the purpose of being sold or otherwise dealt with as the said bailor may direct, and when sold to pay the net proceeds to the said bailor. We hereby acknowledge ourselves to be the bailees of said property for said bailor. If for any reason whatever a sale of said property is not completed within three days we agree to return same to said bailor.      SENEY, ROGERS & Co.
Chicago, July 9, 1912.          By R. T. Rogers."

Substantially similar receipts were given for the securities delivered on July 12, 1912, and February 7, 1913. The plaintiffs in error sold some of the securities so received for cash, pledged some for borrowed money, which they used, and exchanged some for real estate, which was conveyed to a syndicate which they owned. None of the securities were returned to the defendant in error and none of the proceeds were delivered or paid to him, and he finally began this action against the plaintiffs in error on March 26, 1914. The cause was tried by a jury, and a verdict was rendered on March 20, 1916, finding both the defendants guilty of wrongful and fraudulent conversion and ap-

propriation of the property of plaintiff with the intention to cheat and defraud him and assessing the damages at $58,800, being the value of the securities converted with interest to the date of the verdict. A motion for a new trial was made but was not disposed of until June 1, 1917, when it was overruled and judgment was entered for the amount of the verdict, with the addition of $3519.76 interest accrued since the verdict was rendered. The Appellate Court held that since the value of the securities converted was greater than the amount of the indebtedness due from the plaintiffs in error to the defendant in error for which the securities had been pledged, the verdict was too large and should be reduced to the amount of the indebtedness, and modified the judgment accordingly. The basis for this conclusion will be considered hereafter.

The plaintiffs in error contend that there was no conversion and that trover will not lie; that improper items were included in the verdict; that there was error in the admission of testimony, and that a new trial should be awarded because of the misconduct of certain witnesses in the presence of the jury.

Trover will lie for the wrongful conversion of bills of exchange, promissory notes, bonds or other securities for the payment of money. Any unauthorized act by which an owner is deprived of his property permanently or indefinitely, or the exercise of dominion over property inconsistent with the rights of the owner, is a conversion. The securities were delivered to the plaintiffs in error as bailees, to be sold or otherwise dealt with as the bailor might direct, or to be returned to him within the time mentioned in the receipts. They were not returned but were otherwise disposed of. This disposition, if unauthorized by the defendant in error, was a wrongful conversion. There is a dispute in the evidence as to the purpose for which the securities were delivered to the plaintiffs in error and as to the directions given by the defendant in error at the

time of such delivery and afterwards, but this dispute can not be taken into consideration here. The verdict having been in favor of the plaintiff and the Appellate Court having made no contrary finding of fact affecting the right of recovery, every disputed fact must be regarded as settled in favor of the defendant in error. We must therefore assume that the defendant in error delivered the securities to the plaintiffs in error for the purpose of being taken to Toledo, where the plaintiffs in error were engaged in a deal with a bank involving $300,000, for which they wanted to take some good securities there. The plaintiffs in error not being able at that time to give the defendant in error a check or new securities, requested the defendant in error to let them have his securities on a trust receipt, to which the defendant in error agreed, and the securities were delivered upon the strength of the receipts which have been referred to. The securities were immediately disposed of by the plaintiffs in error. There was no deal in Toledo and no attempt to dispose of the securities for the purpose or in the manner mentioned to the defendant in error. When neither the securities nor the proceeds from their disposition were returned to the defendant in error he demanded the return of the securities, but was informed that the sale in Toledo had not been concluded but would be in a few days, and other similar assurances were given him, until finally he was told that the plaintiffs in error had been obliged to use a part of the securities as collateral for their indebtedness and were unable to return them to him.

The authority of a bailee is limited by the terms of the contract by which he acquired the possession of the property. Though he has the bailor's authority to use it for one purpose this confers no right to use it for another, and if he does use it for a different purpose from that for which he was authorized, or in a different manner or for a longer time, he will be held liable for any loss, even through an unavoidable accident. Any unauthorized act

which deprives an owner of his property is a conversion. An agent who, having received a bill of exchange to be discounted, procures its discount and appropriates the money to his own use is not guilty of the conversion of the security but a misappropriation of the proceeds, but if instead of getting the bill discounted he uses it for the payment of his own debt he is guilty of a conversion. *(Palmer* v. *Jarman,* 2 M. & W. 282; *Cranch* v. *White,* 1 B. N. C. 414; *Adkins* v. *Owen,* 4 Ad. & E. 819.) Here the plaintiffs in error received the securities as bailees for a particular purpose to be accomplished within a fixed time. That purpose was the transaction with the bank in Toledo. The securities were disposed of for an entirely different purpose, in a different manner, to a different purchaser and at a different place. Since the securities were negotiable, the purchasers, having no notice of the limitation of the authority of the plaintiffs in error, acquired a good title to the securities, but the unauthorized sale was a conversion by the plaintiffs in error. The defendant in error had the right to limit the authority to sell to a sale at a certain place or to a certain person or for a certain purpose, and the sale by the bailees in disregard of such limitation of authority was a conversion. The contract of bailment was to return the securities within a designated time if they were not sold or otherwise disposed of, as the defendant in error might direct. They were not returned and were not so sold or disposed of but were disposed of in an unauthorized way.

In August, 1911, Mrs. Knight, defendant in error's intestate, entered into a written agreement with the plaintiffs in error, which, after reciting that plaintiffs in error were engaged in the banking and brokerage business and the business of loaning money and buying and selling mortgages and other securities upon commission and otherwise, contained the agreement on the part of Mrs. Knight that she should for a term of five years from August 10, 1911,

invest the sum of $30,000 in the purchase from the plaintiffs in error of mortgages or trust deeds or bonds approved by James H. Knight and Paul Brown at not to exceed their par value, the notes or bonds so purchased to be delivered to Mrs. Knight, together with the original mortgages, trust deeds and mortgagee's title guaranty policies and policies of fire insurance and a written statement in regard to the location, nature and value of the premises concerned. The plaintiffs in error were given the right to sell any of the notes or bonds purchased by Mrs. Knight upon furnishing her other notes and bonds in lieu thereof. They agreed to pay to Mrs. Knight $3000 a year during the continuance of the agreement, in quarterly installments in advance, Mrs. Knight agreeing to deliver to them, as they matured, all the interest notes or coupons and any interest collected on any of the securities purchased, the quarterly payments to Mrs. Knight to be in full payment of any profits arising from her investment. On the termination of the agreement the plaintiffs in error agreed to pay to Mrs. Knight the sum of $30,000 so invested by her, together with any quarterly installments which might be due, and upon such payment being made Mrs. Knight agreed to deliver to the plaintiffs in error all notes and bonds purchased by her from them and not theretofore delivered. The agreement further provided that upon its termination, if the plaintiffs in error failed to re-pay the sum of $30,000, Mrs. Knight might sell the notes or bonds at public auction to the highest bidder for cash on ten days' written notice to the plaintiffs in error of the time and place of sale, without giving any other notice or advertising the sale and might herself become the purchaser. Afterward, on December 9, 1911, Mrs. Knight and the plaintiffs in error entered into five other agreements substantially identical with the one which has just been recited, except that three of them called for an investment of only $10,000 each and the payment of $1000 per year to Mrs. Knight, and two of

them provided for an investment of $5000 each and the payment of $500 per year to Mrs. Knight. Under these agreements the securities in question were delivered to Mrs. Knight, and at her death, which occurred in January, 1912, she had the securities in her possession. The defendant in error objected to the admission of these contracts in evidence, but they were properly admitted and were material for the purpose of establishing the value of the deceased's interest in the securities. She was never the absolute owner of the securities, for her interest was limited to the amount of cash which she had actually invested, with ten per cent per annum interest thereon. She could not sell them but the plaintiffs in error could. She was bound to deliver to the plaintiffs in error or their order any of the securities which they might sell, upon their furnishing her other securities in lieu of those sold. She was bound to deliver to the plaintiffs in error all interest notes or coupons and all interest collected by her, and upon the termination of the contract she was entitled to receive the sum which she had deposited with the plaintiffs in error and was bound to return to them all securities which she had received. The ten per cent per annum interest upon the money invested by Mrs. Knight, which she was to receive in quarterly installments, was stated to be in payment and satisfaction of her share of the profits arising from her investment, for her services in examining the securities involved and all other services in connection with the investment. Before the first contract was entered into the defendant in error testified that Seney stated to him that if he could get some long-time loans on stocks or bonds with the right to re-buy, he would pay six per cent on the money and four per cent for the privilege of re-buying and for the extension of the loans. Mrs. Knight had no interest in the securities except as collateral security for the loans of money which she made to the plaintiffs in error, and it is apparent from the contracts themselves that the transactions which they evi-

denced were not sales of securities but merely loans of money at a usurious rate of interest. (*Mercantile Trust Co.* v. *Kastor*, 273 Ill. 332; *Dorothy* v. *Commonwealth Co.* 278 id. 629.) The interest of Mrs. Knight's estate in the securities was therefore the amount of the indebtedness due from the plaintiffs in error unless that amount exceeded the value of the securities, and it was for the purpose of determining the extent of such interest that the contracts were admitted in evidence.

The defendant in error argues that the deliveries of the securities to the plaintiffs in error were separate and independent transactions, entirely distinct from those under the contracts with Mrs. Knight, and that therefore no allowance could be made on account of any usurious interest paid on the contracts. The evidence shows that ten per cent per annum interest was paid on the contracts quarterly during Mrs. Knight's lifetime and to her administrator after her death. The bailment of the securities can not be regarded separately from the contracts, because the measure of damages to be recovered is the value of the estate's interest in the securities, and that interest can be determined only by ascertaining the amount of indebtedness of the plaintiffs in error on the contracts.

These securities were delivered to the plaintiffs in error by the administrator, and it is insisted by the defendant in error that payments of usurious interest made to Mrs. Knight in her lifetime cannot be set off against the claim of her administrator arising out of transactions occurring after her death. The law is well settled that in an action to recover money accruing to an administrator after the death of an intestate the defendant cannot set off a debt due from the intestate in his lifetime. But that principle is not applicable to this case. There is no attempt here to set off a debt due from the intestate. The action is to recover the value of the estate's interest in the converted property. That value is to be ascertained by deter-

mining the amount of the indebtedness to the estate, and in ascertaining that amount payments made to the intestate in her lifetime are properly taken into consideration.

The defendant in error had possession of the securities as the administrator of Mrs. Knight's estate. He delivered them to the plaintiffs in error as bailees subject to his order. He was entitled, as administrator, to the immediate possession of the securities, and upon their conversion by the plaintiffs in error had a right to maintain an action of trover in his name as administrator.

The plaintiffs in error insist that the defendant in error continued to collect the usurious interest after he knew the securities were sold, and could not, therefore, claim a conversion of the property. The payments were made under the contracts and had no relation to the conversion of the securities, which were held as collateral security for the contracts. There was no settlement as to securities conveyed, but according to the testimony of the defendant in error he was constantly demanding their return or the value of them. The plaintiffs in error had agreed to make the payments mentioned in the contracts. The fact that they continued to make and the defendant in error to receive payments according to the contracts after the plaintiffs in error had conveyed the securities did not waive their tort or affect his right to ask for the conversion.

The defendant in error gave to the plaintiffs in error on March 1, 1912, his check, as administrator, for $15,000, and on May 15, 1912, his check, as administrator, for $5000. These sums were included in the verdict, and it is insisted that such inclusion was improper; that an administrator cannot loan the money of the estate, and if he does so and sues for the money loaned he must bring suit in his individual name. The plaintiffs in error gave a receipt to James H. Knight, administrator, for the $15,000 deposited with them, "to bear interest at six per cent from date for a period of thirty days. It is further understood that after

thirty days said funds may be withdrawn upon five days' notice to Seney, Rogers & Co." For the $5000 the defendant in error received a receipt to himself as administrator, "to apply on collateral arrangement, collateral for same to be delivered within three days from date." The plaintiffs in error paid interest on these amounts at the same rate as on the sums advanced by Mrs. Knight in her lifetime, and there was evidence from which it might be inferred that the amount of $20,000 was regarded by the parties as a part of the indebtedness for which the securities in the hands of the administrator were held as collateral. The money was the money of the estate, and this fact was known to the plaintiffs in error when they received it by means of a check signed by the defendant in error as administrator. It was held in *Wolf* v. *Beaird,* 123 Ill. 585, that an executor who has under a mistaken belief in the solvency of the estate paid a creditor in excess of his *pro rata* distributive share, may recover the over-payment in an action for money had and received in his name, as executor, for the use of the estate, and it is said that an executor or administrator may sue either in his representative or in his personal capacity on contracts made with him after the death of the deceased. (Dicey on Parties to Actions, 233.) It is immaterial to the defendant whether the plaintiff sued in his representative capacity or in his individual name.

It is assigned for error that the Appellate Court having found that the defendant in error had recovered a sum largely in excess of what he was entitled to recover, erred in not reversing the judgment of the municipal court, in finding that the defendant in error was entitled to a verdict for the sum of $34,585.83, and in affirming the judgment of the municipal court for the sum of $38,253.23. The cause was tried by a jury in the municipal court, and where the constitutional right to a jury trial has not been waived the Appellate Court has no power, upon reversing

a judgment, to determine the cause upon the merits and enter final judgment. (*City of Spring Valley* v. *Spring Valley Coal Co.* 173 Ill. 497; *North Side Sash and Door Co.* v. *Goldstein,* 286 id. 209.) Where, however, the only ground for a new trial is excessive damages, the practice in this State is long established and uniform to allow the plaintiff to obviate the objection by remitting a part of the verdict. In some jurisdictions the court cannot order a *remittitur* as the alternative for a new trial in causes sounding in damages where the damages are unliquidated, but a contrary rule prevails here. The court cannot compel the plaintiff to remit any part of the verdict, but may give him his election to do so or take a new trial. The practice is stated and many cases showing its long continued and uniform observance are cited in *North Chicago Street Railroad Co.* v. *Wrixon,* 150 Ill. 532. In the present case the plaintiff was given no election but judgment was entered for the reduced amount. The plaintiffs in error have no right to complain, for they had no right to elect, and the defendant in error, who might complain of the error, has not done so. He assigns error on the Appellate Court's reducing the judgment but does not question its power to do so. His complaint is merely that the Appellate Court erred in holding the contract with Mrs. Knight and the payments to her usurious, and in holding that the contracts sued on were not separate and distinct from all others, and in allowing as credits the amounts paid to Mrs. Knight in her lifetime.

William J. Turnes was called as a witness for the purpose of impeaching defendants' reputation for truth and veracity. On direct examination he testified he was acquainted with their reputation and that it was bad. On cross-examination the witness testified that he read the trial of the case was in progress and visited the court room, and while there sought out counsel for plaintiff and told him he knew the reputation of defendants for truth and veracity.

In answer to questions by counsel for defendants he testified he had a lawsuit with them and had a strong feeling against them; that he had judgments (apparently meaning suits) against them and they had judgments (suits) against him. On re-direct examination counsel for plaintiff asked the witness to explain the nature of his litigation with defendants. This was objected to by defendants' counsel on the ground that the records, files and papers were the best evidence. The court overruled the objection and the witness started to answer, when counsel interrupted with an objection, and said what the witness had begun to state was not about the litigation; that if he could explain the litigation counsel would be glad to have him do so. Thereupon counsel for plaintiff asked the witness to just state the nature of the litigation. Counsel for defendants again objected. The court overruled the objection, and the witness answered, "They fraudulently sold my paper without completing the building." Defendants moved the answer be stricken. The court inquired of the witness if he had litigation on that point, and the witness answered he had. The court announced the objection was overruled, and the witness was then excused. It is contended these rulings of the court were erroneous and constitute prejudicial error. Plaintiff answers this objection by insisting that the rulings were not erroneous; that defendants invited the testimony as to the nature of the litigation, and if erroneous they cannot now complain; and further, that if the answers objected to were erroneously permitted, the error was not of such importance and so prejudicial as to warrant a reversal of the judgment. There is some basis for the contention that the statements of counsel for defendants indicated they had no objection to the witness stating what the nature of the litigation was, but when counsel for the plaintiff on re-direct examination asked the witness to explain the nature of the litigation defendants' counsel objected, which objection was overruled. It was proper cross-examination

to ask the witness if he had trouble or litigation with defendants and entertained an unfriendly feeling toward them, but it was not proper to explain the merits or nature of the litigation. Whatever justification the statements of counsel for defendants may have afforded for asking the witness to explain the nature of the litigation, when the question was asked it was objected to, and the objection should have been sustained.

Some other objections are raised to testimony permitted by the court, but we regard them as not of sufficient importance to require discussion. The most important error complained of is the testimony of the witness Turnes, above referred to. We regard the merits of the case as with the plaintiff, and that he was entitled, under the law and the evidence, to have the issues found in his favor. In our view of the law the issues could not reasonably have been found against plaintiff if the testimony complained of had not been admitted. No reason is apparent why a different result might be expected if this judgment were reversed, and in that state of the record the judgment should not be reversed for an error in the admission of testimony of the character here complained of. *Bettis* v. *Green,* 171 Ill. 495; *West Chicago Street Railroad Co.* v. *Maday,* 188 id. 308; *West Chicago Park Comrs.* v. *Boal,* 232 id. 248; *Casey* v. *Chicago City Railway Co.* 237 id. 140; *People* v. *Cleminson,* 250 id. 135; *People* v. *Halpin,* 276 id. 363; *People* v. *Craft,* 282 id. 483.

Objection is made on account of the misconduct of some of the witnesses for the defendant in error in the presence of the jury, but the affidavit on which it is based is not abstracted, and the facts are too vaguely indicated to enable us to say that anything occurred to the prejudice of the plaintiffs in error.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*