(No. 48576.—

WESTERN STATES MUTUAL INSURANCE COMPANY, Appellant, v. JOHN VERUCCHI *et al.,* Appellees.

*Opinion filed May 20, 1977.*

RYAN, J., took no part.

Johnson, Martin & Russell, of Princeton (Daniel K. Russell, of counsel), for appellant.

Berry & O'Conor, of Ottawa (Andrew J. O'Conor, of counsel), for appellee Pekin Farmers Insurance Company.

Perona and Perona, of Spring Valley (Paul Perona, Jr., of counsel), for appellee State Farm Insurance Company.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

Plaintiff, Western States Mutual Insurance Company, brought this declaratory judgment action in the circuit court of Bureau County pursuant to section 57.1 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 57.1), naming as defendants seven individuals, Pekin Farmers Insurance Company (hereinafter referred to as the defendant), and State Farm Insurance Company. Plaintiff sought

a determination of the rights and obligations of all of the parties arising out of a collision occurring on March 29, 1970, including issues of coverage and duties to defend under the three automobile liability insurance policies involved in this case. The circuit court ruled that defendant's policy issued to William Elmendorf, the owner of the automobile, provided primary coverage; that plaintiff's policy issued to Arthur Verucchi, the father of the driver, provided excess coverage, and that State Farm incurred no obligations under the uninsured motorist clause in its policy issued to Gaylord Murphy. The defendant appealed, and the Appellate Court for the Third District reversed in part (38 Ill. App. 3d 266), holding that defendant is not liable under the Elmendorf policy, that plaintiff is liable under the Verucchi policy, and that plaintiff's coverage is primary, not excess only. We allowed plaintiff's petition for leave to appeal.

The defendant's policy covered the use of William Elmendorf's 1969 Plymouth automobile. Robert Elmendorf, William's 16-year-old son, was using that car on the night of March 29, 1970, with his father's express permission. John Verucchi and Raymond Marenda accompanied Robert in the car. The three boys had been close friends and classmates for years, and they frequently went out together on social outings. Robert parked the car at about 11 p.m. in a laundromat parking lot across the street from the Igloo Drive-In, a restaurant in Peru, Illinois, shut off the engine, removed the keys from the ignition, and left them either on or in the console next to the driver's seat. The boys then entered the Igloo Drive-In, which apparently was a popular teenage gathering place. Later, at about 11:30 p.m., John and Raymond told Robert it was time to go, and Robert, sitting with other friends at the time, said he would be along shortly. John and Raymond went out to the car, where they waited for a few minutes. Then John found the car keys and decided to start the car so he could drive across the street into the Igloo parking

lot, where they would wait for Robert. Heavy traffic prevented John from making a left turn into the Igloo lot, and he proceeded down the street, intending to drive around the block and return from the opposite direction. At a location about three or four blocks from the Igloo, John collided with a car driven by Gayle Murphy and owned by his father, Gaylord. After briefly assisting Gayle, John could not find Ray, and he left the scene immediately prior to the arrival of the police. John returned to the Igloo but did not speak to Robert, and the Elmendorfs did not learn until the following day that John had been driving the automobile at the time of the accident.

William Elmendorf had instructed his son never to permit anyone else to drive the car. John engaged in no discussion with Robert concerning driving the car, and neither William Elmendorf nor Robert had told John that he could or could not drive the automobile. Robert testified that he had never permitted anyone else to drive the car. Gayle Murphy testified that Robert let him drive it once shortly after his father purchased it. There was no evidence that John was aware of this instance. No members of John's and Robert's social group had ever driven a vehicle owned by someone else's father. At the time of the accident, John was 15 years old and not a licensed driver, but he had driven his father's van without permission on prior occasions.

Dispositive of this case, in our judgment, are the opinions of this court in two recent cases. In *Maryland Casualty Co. v. Iowa National Mutual Insurance Co.* (1973), 54 Ill. 2d 333, the initial permission rule was applied to a situation where a father had told his son not to let anyone else drive the father's car. It was held that "once the initial permission has been given by the named insured, coverage is fixed, barring theft or the like." (54 Ill. 2d 333, 342.) Subsequent to the decision of the appellate court in this case, this court decided *United States Fidelity and Guaranty Co. v. McManus* (1976), 64

Ill. 2d 239, where the rule in *Maryland Casualty* was reaffirmed. It was there held that "where an insurer elects to include in its policy a broad provision extending liability coverage to persons operating or using a car with the permission of the owner, a further grant of permission from the initial permittee need not be shown in order to invoke the coverage." (64 Ill. 2d 239, 243.) The clause in the owner's policy in *McManus* is identical to the clause in Elmendorf's policy, and therefore the rule in *McManus* compels Elmendorf's insurer to provide coverage here unless the driver's conduct falls within the exceptions noted in *Maryland Casualty* and *McManus*. The *Maryland Casualty* opinion stated the rule applied "barring theft or the like." In *McManus* the court suggested that an insurer might escape liability if "it can prove that the operator of the car has obtained possession by a theft or a tortious conversion." (64 Ill. 2d 239, 243.) Defendant urges that John Verucchi's conduct falls within the meaning of the theft or tortious conversion exception. We hold that it does not.

Clearly, John Verucchi's conduct does not constitute theft, since it is undisputed that he lacked the requisite intent to permanently deprive the Elmendorfs of their car. Nor do we believe it constituted a tortious conversion. This court has previously said: "Any unauthorized act by which an owner is deprived of his property permanently or indefinitely, or the exercise of dominion over property inconsistent with the rights of the owner, is a conversion." (*Knight v Seney* (1919), 290 Ill. 11, 15.) One prominent author has stated: "Highly technical in its rules and complications, perhaps more so than any other [tort] except defamation, [conversion] almost defies definition." (Prosser, Torts sec. 15, at 79 (4th ed. 1971).) It is quite apparent from *McManus* that the rationale of both it and *Maryland Casualty* was "to bring simplicity to what had become a complex area of the law necessitating frequent litigation and to further implement a policy long adhered

to regarding the benefit received by the public from private insurance contracts." (64 Ill. 2d 239, 242.) It was not the purpose of *McManus* to substitute for the collateral inquiries into the niceties of "permission" a series of like inquiries into the technicalities of "tortious conversion." As that term was there used it referred to a substantial interference with or deprivation of an owner's rights in his vehicle. In our judgment, insurance coverage is provided under the rule in *McManus* unless the subsequent user of the vehicle gained possession of it with the intent to permanently (theft) or indefinitely (tortious conversion) deprive the owner or the initial permittee of his rights therein.

In this case it seems apparent that John Verucchi's intent was merely to drive the Elmendorf automobile across the street a total distance of 50 to 100 feet, and there await Robert Elmendorf—an act not entirely for his own benefit. Even though he could not make a left turn and heavy traffic forced him to drive further, his intent remained the same, *i.e.,* to get into the Igloo parking lot and await Robert Elmendorf. There is no indication of any intent to deprive William or Robert Elmendorf of the car for even a brief period of time. While that action may have constituted a technical conversion, it is clearly not the type of conduct embraced within the *Maryland Casualty* and *McManus* exceptions. The circuit court was correct in ruling that defendant's policy provided primary coverage and plaintiff's policy provided excess coverage.

For the reasons stated, the judgment of the appellate court is reversed in part and affirmed in part, and the judgment of the circuit court is affirmed.

*Appellate court affirmed in part and reversed in part; circuit court affirmed.*

MR. JUSTICE RYAN took no part in the consideration or decision of this case.