HARRY W. KUHN, INC., Plaintiff-Appellant, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant and Counterplaintiff-Appellee (Marilyn Combs, Indiv. and as Adm'r of the Estate of Kimberly K. Kasper, Deceased, *et al.*, Counterdefendants).

First District (2nd Division) No. 1—89—2147

Opinion filed June 29, 1990.

Pretzel & Stouffer, Chartered, of Chicago (Robert Marc Chemers and Robert J. Franco, of counsel), for appellant.

Querrey & Harrow, Ltd., of Chicago (Michael Resis, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

This appeal is taken from a summary judgment, entered in a declaratory judgment action, finding that the driver of a pickup truck involved in an accident had no permission from its owner to use the vehicle, resulting in the absence of insurance coverage. A vehicular collision occurred between the pickup truck, driven by Erik Zimmerman (Zimmerman), and a dump truck, owned and operated by plaintiff Harry W. Kuhn, Inc. (Kuhn). The pickup truck was insured under a policy issued by defendant State Farm Mutual Automobile Insurance Co. (State Farm).

Prior to the instant accident, a different truck had been involved in another accident between its owner, Donald Dickens (Dickens), and Kimberly Kasper (Kasper), who had been driving her automobile. Ad-

mitting liability, Dickens allowed Kasper to use his pickup truck, insured by State Farm, until he could pay for repairs to her car or for a replacement vehicle. Kasper took the pickup truck and then permitted Zimmerman to use it.

The collision underlying this litigation occurred on April 16, 1987. Kuhn, an Illinois corporation engaged in the business of commercial trucking, alleged the following in its complaint for declaratory judgment: State Farm issued an automobile liability insurance policy to Dickens, covering the subject 1986 Mazda pickup truck; on March 14, 1987, Dickens knowingly and voluntarily gave possession of the truck to Kasper;[1] subsequently, on April 16, 1987, Kasper permitted Zimmerman to operate the vehicle; while Zimmerman was driving westbound on North Avenue near West Chicago, Illinois, the pickup truck crossed the center line into the eastbound lane and collided head-on with a truck and trailer owned by Kuhn;[2] the collision caused Kuhn's truck to overturn, resulting in damages exceeding $100,000; and Kuhn promptly made a claim to State Farm, which refused to acknowledge coverage. Kuhn's complaint requested that the circuit court declare Zimmerman a permissive user of Dickens' vehicle and that the State Farm policy provided coverage for Kuhn's loss.

The State Farm insurance policy contained an omnibus clause which provided, in part, "When we refer to your car, a newly acquired car, or a temporary substitute car, insured means *** any other person while using such a car if its use is within the scope of consent of you or your spouse ***."

In its answer, State Farm admitted Dickens knowingly and voluntarily gave possession of the pickup truck to Kasper, but pleaded further that Dickens revoked his permission prior to April 16, and Kasper wrongfully refused to return the vehicle, substantially interfered with and deprived his use of the vehicle, and tortiously converted it for her own use. State Farm denied Zimmerman was a permissive user of the pickup truck and requested that the court find he was not an insured pursuant to the policy.

State Farm subsequently moved for summary judgment. Kuhn filed a cross-motion for summary judgment. Neither party claims the presence of a genuine, material issue of fact raised by their respective

---

[1]In the complaint, Kimberly Kasper is incorrectly referred to as "Kimberly Karson."

[2]Kasper and her son, Donald Kasper, age three, passengers in the pickup truck, were killed in the accident. Zimmerman was severely injured. The estates of Kimberly and Donald Kasper eventually filed suit in Kane County against Zimmerman and Dickens, among others, as a result of the accident.

motions for summary judgment.

In support of its motion, State Farm attached Dickens' affidavit, a copy of the insurance policy, and letters written by Dickens to Kasper evidencing his demand for the return of his vehicle. Dickens' affidavit asserts he owned the pickup truck in question, which was insured with State Farm; on March 14, 1987, he was involved in an automobile accident with Kasper; following the accident, he agreed to let Kasper use the pickup truck until he could pay her to cover the repair of her vehicle or the cost of a replacement; within 10 days of this accident, Dickens demanded the return of the pickup truck from Kasper, her boyfriend Zimmerman, and her father, but they refused; because of this refusal, he contacted the Cook County sheriff's office; he sent letters by certified mail to Kasper and her mother, demanding the return of the truck; on April 16, the truck was in Kasper's possession without Dickens' permission or approval; he did not authorize her or Zimmerman to drive the vehicle on April 16 when it was involved in the fatal collision with Kuhn's truck. The certified letters sent to Kasper and her mother, and referred to in Dickens' affidavit, were attached. Dated March 24, 1987, the letters demanded the return of the truck by noon on March 28, 1987, at a designated location.

In a discovery deposition, Dickens testified as follows. On March 14, 1987, in Wood Dale, he was involved in an accident with Kasper for which he admitted fault. He agreed to allow Kasper to drive his pickup truck until he either paid her $1,000 or was able to fix her car, and gave her a note detailing this arrangement in the event she was stopped by police.

Over the next several weeks, Dickens demanded the return of the vehicle from Kasper, Zimmerman, and Kasper's family. Dickens called Zimmerman at work after learning he was using the truck. He telephoned Kasper repeatedly, attempted to visit her at her mother's house and on three or four occasions had the full $1,000 to give her; however, she refused to meet with him. After Kasper failed to appear at one planned meeting with Dickens, she advised him she was afraid he was going to "rip the truck from her."

Pursuant to questioning by Kuhn's counsel at the deposition, Dickens described several demands he made for the return of the vehicle. Zimmerman variously told Dickens he "had the truck, and the father was driving the truck, and they had it hidden somewhere, and they weren't going to give it back," "I think you're trying to rip me off. We're keeping the truck," and "You're never going to get your truck back. I'll blow the truck up." Dickens advised Zimmerman he had the money, would meet with him anywhere, and needed the truck to be

returned, but Zimmerman refused to cooperate.

Dickens also testified at the deposition that he repeatedly communicated his readiness to pay Kasper the $1,000. He "had the thousand three times in [his] hand, and she would never meet" him; he also told Zimmerman he had the money. The following exchange then occurred:

"Q. Now, sir, you told us a few minutes ago that you had offered a thousand dollars to Kim Kasper.

A. Yes. I told her mother that; I told her grandmother that.

Q. Well, did you ever tell Kim that?

A. I told everybody that."

After talking with Kasper's mother and grandmother, Dickens did not believe she planned to return the vehicle because "her whole family said since she's got that piece of paper, the truck is hers and I'll never get it back." Kasper also told Dickens she would not return the truck, at which point he notified the Cook County sheriff's office and made a theft complaint. The sheriff's report makes reference to the agreement between Dickens and Kasper, and that Dickens at a later date "told her that he would not be able to pay her the full amount agreed to and that he would have to make payments," but she refused to return the vehicle. Dickens explained that, a week to 10 days before the fatal accident, he no longer had the $1,000, but offered to pay $600 to Kasper and the balance later. Kasper and her father agreed with Dickens to arrange a payment plan.

The sheriff's report also reflects the investigating officer suggested to Kasper that she contact Dickens' insurer and settle the matter directly with it "if she [could] not bring herself to deal with" Dickens, to which she agreed. The sheriff's office took no further action. Dickens indicated that he and the investigating officer had arranged to "take the truck" pursuant to "papers from a judge." Dickens never paid the $1,000 or repaired Kasper's vehicle. The keys to the pickup truck were never returned.

By counterclaim against the Kane County plaintiffs, State Farm sought a declaration that Zimmerman was not an "insured" under the policy, alleging he was not using the vehicle within the scope of Dickens' consent at the time of the accident.

Kuhn's cross-motion for summary judgment contended that Zimmerman was an insured under the omnibus clause of the policy. Kuhn's reply, used in further support of its motion for summary judgment, provided the affidavit of Zimmerman, who stated the following: based on information provided to him by others, he was present in the pickup truck on April 16, 1987, when it collided with the Kuhn Vehicle; he had no recollection of matters from a time period prior to the

accident until sometime afterward; his family and physicians advised him he was in a coma for several weeks following the accident; he was hospitalized for 7½ months due to his injuries; he has difficulty with short-term memory; he had no recollection of Dickens ever demanding the return of his truck; he recalled the accident between Dickens and Kasper, after which Dickens handed the truck's keys to Zimmerman; he lived with Kasper after Dickens relinquished possession of the truck; and Dickens never came to Zimmerman's residence.

Upon uncontested facts and the cross-motions for summary judgment, the circuit court found an initial permissive transfer of the vehicle to Kasper, and thereafter, to Zimmerman. It then determined, as a matter of law, that Dickens revoked his permission prior to the fatal accident, stating:

> "I don't know what more he could have done, other than what he did do. He wrote, he called, and he reported to the police, and in all instances his position was the same, that he wanted possession of the vehicle.
>
> I think at that time there is either a return, in the absence of a return there is a tortious conversion."

Concluding that Zimmerman was not using the vehicle within the scope of Dickens' consent, the circuit court granted State Farm's, and denied Kuhn's, motion for summary judgment. Kuhn appeals.

I

Kuhn Initially contends that Kasper, and later Zimmerman, were permissive users of Dickens' pickup truck, thereby bringing them within the definition of "insured" for purposes of coverage under the State Farm policy. Kuhn urges that the "initial permission rule" extends insurance coverage to Zimmerman, who operated the vehicle after Dickens originally gave permission to Kasper, even though Dickens did not expressly consent to Zimmerman's use.

 █ The initial permission rule provides that " 'once the initial permission has been given by the named insured, coverage is fixed, barring theft or the like.' " (*Maryland Casualty Co. v. Iowa National Mutual Insurance Co.* (1973), 54 Ill. 2d 333, 341, 297 N.E.2d 163, quoting *Odolecki v. Hartford Accident & Indemnity Co.* (1970), 55 N.J. 542, 549-50, 264 A.2d 38, 42.) Once the named insured of a policy, which contains an omnibus clause that extends liability coverage to those driving the covered automobile with the insured's consent, gives such consent to another, any third person allowed to drive the vehicle by the initial permittee likewise is covered. (*Maryland Casualty Co.*, 54 Ill. 2d at 342.) The initial permission rule applies to devia-

tions by the first permittee from the authority given him by the insured concerning the use of the vehicle, as well as to situations where the first permittee exceeded the scope of the authority by allowing a third person to drive the vehicle. (*Maryland Casualty Co.*, 54 Ill. 2d 341-42.) Further, the initial permission rule confers coverage even where it cannot be established that the initial permittee granted permission to the third person driving the vehicle. (*United States Fidelity & Guaranty Co. v. McManus* (1976), 64 Ill. 2d 239, 243, 356 N.E.2d 78.) This doctrine is inapplicable, however, to an insurer where the third person driving the vehicle obtained possession by theft or tortious conversion. *McManus*, 64 Ill. 2d at 243.

Did Dickens' revocation of permission transform Zimmerman's continued possession of the pickup truck into a tortious conversion, thereby rendering the initial permission rule inapplicable?

In *Western States Mutual Insurance Co. v. Verucchi* (1977), 66 Ill. 2d 527, 363 N.E.2d 826, the court defined a conversion as " '[a]ny unauthorized act by which an owner is deprived of his property permanently or indefinitely, or the exercise of dominion over property inconsistent with the rights of the owner.' " (66 Ill. 2d at 531, quoting *Knight v. Seney* (1919), 290 Ill. 11, 15, 124 N.E. 813.) In cases involving the initial permission rule, a tortious conversion occurs where there is a substantial interference with or deprivation of an owner's rights in his automobile. *Verucchi*, 66 Ill. 2d at 532; *Woodall v. Booras* (1989), 182 Ill. App. 3d 1096, 1103, 538 N.E.2d 1263.

In the instant case, Dickens' sworn deposition testimony, elicited by Kuhn's counsel, establishes he repeatedly demanded the return of the truck from Kasper, Zimmerman, and Kasper's family, but they did not comply. On at least three occasions, he was willing and able to pay Kasper the $1,000 and retake possession of the vehicle, but she refused to meet him. He telephoned Kasper repeatedly and attempted to meet or visit with her in person, without success. He talked to Kasper's mother and grandmother. He wrote letters to Kasper and her mother demanding the truck. He contacted police. He completed a theft complaint. He, Kasper, and her father agreed to arrange a payment plan. Dickens planned to take legal action to reclaim the truck. In all instances, Dickens' clear intent was that he wanted the immediate return of his pickup truck. No evidence was offered by Kuhn to the contrary.

■ Based on this uncontested state of the record, Kasper's retention of the vehicle was unauthorized and deprived Dickens of his pickup truck for an indefinite time. Dickens' uncontroverted, sworn deposition testimony indicates he repeatedly demanded his vehicle,

and further, that he was ready and able to pay the $1,000 and informed "everybody" of that fact, including Zimmerman, Kasper, her mother, and her grandmother. He later told Kasper's father he was agreeable to a payment plan when he no longer had the full amount. Although neither Kasper nor Zimmerman is able to offer evidence to rebut Dickens' deposition testimony or affidavit to create an issue of fact, Kuhn has provided no other evidence, such as counteraffidavits from Kasper's mother, father, or grandmother, persons identified by Dickens as having knowledge of his offers to pay the $1,000 and of his repeated demands for the vehicle. The facts contained in Dickens' affidavit and deposition testimony are uncontradicted and must be taken as true. *Purtill v. Hess* (1986), 111 Ill. 2d 229, 241, 489 N.E.2d 867.

▪ Nor can we characterize Dickens' actions as a "period of negotiation," as suggested by Kuhn's counsel at oral argument. Dickens' behavior is inconsistent with negotiation; for example, after his demands for the vehicle were rejected, Dickens went to the police and completed a theft complaint in an attempt to recover possession.[3] The unauthorized conduct of Zimmerman and Kasper substantially interfered with and deprived Dickens of his rights in the pickup truck and amounted to a tortious conversion. *Woodall v. Booras*, 182 Ill. App. 3d at 1103.

Kuhn's further assertion that Zimmerman's intent should control must be rejected. In considering a tortious conversion of one's property, the converter's malice, culpability, or conscious wrongdoing is irrelevant. (*State Farm Fire & Casualty Co. v. Rixecker* (1989), 184 Ill. App. 3d 506, 510, 540 N.E.2d 436.) Dickens' deposition testimony nevertheless is replete with evidence, direct and circumstantial, of Zimmerman's intent to deprive him of the possession of the pickup truck. There is no evidence of any contrary intent harbored by Zimmerman. The circuit court properly found as a matter of law that Zimmerman was not using the vehicle within the scope of Dickens' consent at the time of the accident.

## II

▪ Kuhn next asserts the circuit court improperly considered statements in Dickens' affidavit and deposition testimony that related to his conversations with Kasper and Zimmerman, claiming that such

---

[3]Contrary to Kuhn's counsel's claim, the police did *not* recognize that Dickens had no immediate right to possession; rather, the police suggested only that it was a civil dispute and not a criminal matter.

evidence constituted inadmissible hearsay. A statement is not hearsay, however, if it is not offered to prove the facts asserted. (McCormick, Evidence §249, at 732 (E. Cleary 3d ed. 1984).) Hearsay is not implicated if the mere making of the statement is legally significant (see *Digman v. Johnson* (1960), 18 Ill. 2d 424, 427, 164 N.E.2d 34; M. Graham, Cleary & Graham's Handbook of Illinois Evidence §801.5, at 576-77 (5th ed. 1990)), such as a statement relating to and explaining a particular act. See *Grebe v. Vacek & Co.* (1968), 103 Ill. App. 2d 79, 243 N.E.2d 438.

In this case, Dickens' oral and written demands were not hearsay, but were legally relevant under the circumstances that they were, in fact, made. (See *Lundberg v. Church Farm, Inc.* (1986), 151 Ill. App. 3d 452, 458-59, 502 N.E.2d 806.) The tortious conversion did not occur until Dickens demanded the return of his pickup truck and Zimmerman and Kasper refused to comply. (See *Scheduling Corp. of America v. Massello* (1983), 119 Ill. App. 3d 355, 359, 456 N.E.2d 298.) Dickens' "statements" to and conversations with Zimmerman and Kasper demanding the return of the truck were legally significant simply because they were made. (*Lundberg v. Church Farm, Inc.*, 151 Ill. App. 3d 452, 502 N.E.2d 806; *cf. Patterson-Stocking, Inc. v. Dunn Brothers Storage Warehouses, Inc.* (1937), 201 Minn. 308, 276 N.W. 737 (evidence of instructions given by owner to driver, to show whether driver acting within owner's consent at time of accident, was not hearsay).) As the circuit court properly recognized in rejecting Kuhn's hearsay objection, "[A]ssuming it is hearsay doesn't mean anything. What is important is the demand. There was a demand of Kasper, there was a demand of Zimmerman." Consideration of this evidence was not error.

Defendant's last contention is that Dickens' conversations with Kasper and Zimmerman were barred by the Dead Man's Act (Ill. Rev. Stat. 1987, ch. 110, par. 8—201). Kuhn, however, may not avail itself of the Dead Man's Act. The only parties entitled to object to the testimony of an interested witness under this statute are adverse parties suing as representatives of the deceased or incompetent persons. (See *Brownlie v. Brownlie* (1932), 351 Ill. 72, 77, 183 N.E. 613.) Here, Kuhn is suing in its own behalf and is not protected by the Act.

Additionally, as found by the circuit court, Dickens was not an interested party. For Dickens to have been disqualified as a witness "directly interested in the action" under the Dead Man's Act, his interest in the outcome must have been such that certain pecuniary gain or loss would have come directly to him as the immediate result of the judgment. (*Michalski v. Chicago Title & Trust Co.* (1977), 50 Ill. App.

3d 335, 339, 365 N.E.2d 654.) In this case, Dicken's personal liability coverage was not at issue. He gained nothing through the declaratory judgment entered in favor of State Farm; also, he would have been covered under his insurance policy if Kuhn had prevailed. He had no direct, certain, and pecuniary interest in the result of this case. The circuit court properly rejected Kuhn's objection based on the Dead Man's Act.

Based upon the foregoing, the judgment of the circuit court must be affirmed.

Affirmed.

DiVITO, P.J., and SCARIANO, J., concur.