No. 3--96--0170

_________________________________________________________________

                    IN THE APPELLATE COURT OF ILLINOIS

                              THIRD DISTRICT

                                A.D., 1996

WESTERN STATES INSURANCE       )    Appeal from the Circuit Court

COMPANY,                       )    for the 13th Judicial Circuit

                               )    La Salle County, Illinois

     Plaintiff-Appellant,      )

                               )

v.                             )    No. 95 SC 1417

                               )

LOUIS E. OLIVERO & ASSOCIATES )

and DAVID W. OLIVERO,          )    Honorable

                               )    William R. Banich

     Defendants-Appellees.     )    Judge, Presiding

_________________________________________________________________

                     MODIFIED UPON DENIAL OF REHEARING

       PRESIDING JUSTICE BRESLIN delivered the opinion of the court:

_________________________________________________________________

     The plaintiff, Western States Insurance Company (Western

States), filed the instant case against the defendants, Louis E.

Olivero & Associates and David Olivero, alleging that they

wrongfully refused to satisfy Western States' claim for subrogation

out of the proceeds of a settlement in a personal injury case.  The

trial court granted the defendants' motion for summary judgment. 

We hold that Western States was entitled to receive the amount of

its subrogation claim from the proceeds of the settlement and that

the defendants' failure to honor the subrogation claim amounted to

a conversion of Western States' property.  Accordingly, we reverse

the court's order and grant summary judgment in favor of Western

States.

     Western States provided automobile insurance to Gaylon and

Judy Irvin.  After an automobile accident involving the Irvins and

Sharon Gualandi, the Irvins retained the defendants to recover

damages from Gualandi.  The Irvins settled their claims for a total

of $20,000.  Under Western States' insurance policy with the

Irvins, Western States had a subrogation interest in the suit

because it had paid for medical treatment received by the Irvins.

     Before the settlement checks were issued, the Irvins executed

a release which provided that they would satisfy all liens and

claims against the settlement, including Western States' claim for

medical payments.  The settlement checks were made payable to,

among others, the Irvins, Louis E. Olivero & Associates, and

Western States.  The defendants sent these checks to Western States

for its endorsement.  The letter which accompanied the checks

provided that the defendants agreed to reimburse Western States in

the amount of $2,005.20, and that a check would be forwarded as

soon as the settlement checks cleared.  Western States endorsed the

checks and returned them to the defendants' office with a demand

for payment of $2,005.20.

     The defendants cashed the settlement checks and deposited the

proceeds into a trust account.  The checks cleared the bank on May

4, 1995, but the defendants never paid Western States its share of

the proceeds.  Then, on May 28, 1995, the Irvins informed David

Olivero of their intent to file a bankruptcy petition.  On June 1,

the Irvins' bankruptcy attorney contacted Olivero and advised him

not to disburse any of the settlement proceeds because the proceeds

were property of the bankruptcy estate.  Nevertheless, on the

following day, the defendants disposed of the settlement proceeds

by retaining $9,022.99 in attorney fees and costs and disbursing

the remaining $10,977.01 to the Irvins.  The Irvins did not file

their bankruptcy petition until June 20.  

     In its complaint, Western States alleged, among other things,

that the defendants had converted Western States' funds.  Both

parties filed motions for summary judgment.  In granting summary

judgment for the defendants, the trial court found that the

conversion claim failed because the Irvins maintained control of

the settlement proceeds.  This appeal followed.

     We will confine our discussion in this opinion to whether the

trial court erred by granting summary judgment for the defendants

on Western States' conversion claim and by denying Western States'

motion for summary judgment.

     When parties file cross motions for summary judgment, they

agree that only a question of law is involved and invite the court

to decide the issues based on the record. Andrews v. Cramer, 256

Ill. App. 3d 766, 769, 629 N.E.2d 133, 135 (1993).  On appeal from

the entry of summary judgment, the standard of review is de novo.

Andrews, 256 Ill. App. 3d at 769, 629 N.E.2d at 135.

     To prevail on a conversion claim, a plaintiff must establish

that (1) it has a right to the property; (2) it has an absolute and

unconditional right to the immediate possession of the property;

(3) it made a demand for possession and (4) the defendant

wrongfully and without authorization assumed control, dominion, or

ownership over its property.  Springfield Rare Coin Galleries, Inc.

v. Mileham, 250 Ill. App. 3d 922, 620 N.E.2d 479 (1993).  Retention

of property after a valid demand for its return constitutes

conversion. Harry W. Kuhn, Inc. v. State Farm Mutual Automobile

Insurance Co., 201 Ill. App. 3d 395, 559 N.E.2d 45 (1990).

     In the instant case, the Irvins executed a release which

provided that they would satisfy Western States' claim and the

Irvins' insurance policy gave Western States the right to recover

its medical payments from the personal injury settlement. 

Moreover, Western States was a named payee on the settlement checks

and the defendants promised to pay Western States its share of the

settlement amount as soon as the checks cleared the bank.  Under

these facts, Western States established that it had a right to its

share of the proceeds and an absolute and unconditional right to

the immediate possession of those proceeds after the checks cleared

the bank.  Western States made a demand for its share of the

proceeds, but the defendants failed to comply with this demand

after the checks had cleared.  Because it is clear from the

undisputed facts that the defendants were authorized to hold

Western States' share of the proceeds only until the checks

cleared, the defendants' retention of the proceeds constituted a

conversion.

     The defendants excuse their actions, however, based upon the

rule of professional conduct requiring attorneys to hold all

property subject to a dispute (see 134 Ill. 2d R. 1.15(a) and (c)). 

They also argue that they could only dispose of the Irvins' funds

if directed to do so by them.

     Before the settlement checks cleared, the defendants and the

Irvins had recognized their obligation to honor Western States'

subrogation claim.  Therefore, the fact that Western States was

entitled to receive $2,005.20 from the proceeds of the settlement

checks was not subject to any dispute.  In addition, under the

Illinois Rules of Professional Conduct, the defendants had an

affirmative duty to disburse Western States' share of the

settlement proceeds. See 134 Ill. 2d R. 1.15(b).  Accordingly, we

reject the defendants' argument that the rules of professional

conduct limited their duty to return Western States' share of the

settlement proceeds.

     The defendants also argue that Western States forfeited its

right to pursue the subrogation claim by failing to attend a

creditors meeting with the Irvins' bankruptcy trustee.  They

maintain that the amount owed to Western States was a debt which

was discharged by the bankruptcy court.  We disagree.

     The filing of a bankruptcy petition creates an estate

comprised of all property in which the debtor has a legal or

equitable interest. See 11 U.S.C. §541(a) (1994).  An insurer with

a valid subrogation claim has an equitable right to a portion of

the debtor's recovery from a third party tortfeasor and the amount

of the recovery that represents the costs expended by the insurer

does not become part of the debtor's bankruptcy estate. In re

Squyres, 172 B.R. 592, 595 (1994).  Since both the Irvins and the

defendants had previously recognized their obligation to honor

Western States' subrogation claim and Western States was a named

payee on the settlement checks, the Irvins had no right or interest

in Western States' share of the settlement proceeds.  Thus, Western

States' share of the proceeds did not become part of the Irvins'

bankruptcy estate and Western States was not obligated to attend

the creditors meeting.  In addition, Western States' subrogation

claim was not a debt of the Irvins that could be discharged by the

bankruptcy court. See In re Squyres, 172 B.R. 592, 595 (1994).

     Moreover, as discussed above, the defendants' failure to

return Western States' share of the settlement proceeds after the

checks cleared amounted to a conversion of Western States' funds. 

This conversion occurred before the bankruptcy petition was filed

and before the creditors meeting took place.  The defendants have

cited no authority to support the proposition that their liability

to Western States was affected by Western States' failure to attend

the creditors meeting or the discharge of the Irvins' debts by the

bankruptcy court.  Thus, even if while we recognize that Western

States subsequently forfeited its right to recover the amount of

its subrogation claim from the Irvins, (see Taylor v. Freeland &

Kronz, 503 U.S. 638, 112 S. Ct. 1644 (1992)), it did not forfeit

its right to assert a conversion claim against the defendants.

     While we recognize that the defendants could have mistakenly

believed that they were required to turn over Western States' share

of the settlement proceeds to the Irvins, this mistake does not

relieve the defendants of their liability to Western States. 

Attorneys are well-advised to proceed cautiously whenever a client

files a bankruptcy petition.  However, an attorney is liable to a

third party if he wrongfully releases that party's funds to his

client.  Accordingly, we hold that the defendants' liability to

Western States was not vitiated by Western States' failure to

attend the creditors meeting or by the discharge of the Irvins'

debts by the bankruptcy court.

     Because we reverse the trial court's judgment and grant

summary judgment in favor of Western States, we need not address

the additional grounds for reversal raised by Western States.

     For the foregoing reasons, the judgment of the circuit court

of La Salle County is reversed, and summary judgment is entered in

favor of Western States.

     Reversed.

     HOLDRIDGE, P.J., and McCUSKEY, J., concur.