*In re* ESTATE OF MARY GRUSKE, Deceased (I.H. Mississippi Valley Credit Union, Petitioner, v. Lynda Ryberg, Ex'r of the Estate of Mary Gruske, Respondent-Appellee and Cross-Appellant (Debbie Beauchamp *et al.*, Petitioners-Appellants and Cross-Appellees)).

Third District   No. 3—88—0295

Opinion filed February 16, 1989.

Samuel S. McHard and Stephen T. Fieweger, both of Katz, McAndrews, Durkee, Balch & Lefstein, P.C., of Rock Island (Stuart R. Lefstein, of counsel), for appellants.

Robert G. Scott, of Rock Island, for appellee.

JUSTICE WOMBACHER delivered the opinion of the court:

The trial court found that the estate of Mary Gruske, deceased (the estate), had not overcome the presumption that Mary had possessed the required donative intent when she established a joint credit union account with the claimants, Debbie Beauchamp, Ronnie L. Ziemer and Loretta Caron. The court further found that Mary had later effectively terminated the joint account. The claimants appeal. The estate cross-appeals.

The record shows that on November 18, 1982, Mary executed a will. In the will, she left her nephew, William Ryberg, 40% of the residue of her estate. She named William's wife, Lynda, executor of the will and left her 20%. The remainder of the estate went to other relatives, including 20% to Mary's sister, Clara Ziemer.

In March of 1983, Mary suffered a stroke and spent her remaining four years of life in a nursing home. In the fall of 1983, Mary told Clara that she wished to make Clara's grandchildren, the instant claimants, joint tenants in her savings account at I.H. Mississippi Valley Credit Union (the credit union). She subsequently signed a credit union form naming Clara and the claimants joint tenants. The form provided in relevant part:

"The _____ Credit Union is hereby authorized to recognize any of the signatures subscribed hereto in the payment of funds or the transaction of any business for this account.

\* \* \*

The right or authority of the credit union under this agreement shall not be changed or terminated by said owners, or any of them except by written notice to said credit union which shall not affect transactions theretofore made."

Mary died on January 17, 1987, at age 85. Only then did Clara

learn that the credit union had a December 12, 1984, letter signed by Mary, which stated in relevant part: "Please change the name on my account from Mary Gruske and Clara Ziemer to just Mary Gruske alone."

Lynda Ryberg, as executor of the estate, subsequently withdrew the $60,741.07 in the credit union account, which consisted of $35,574.91 in a regular share account and $25,166.16 in a certificate account. In response, the claimants filed a $60.741.07 claim against the estate, contending that the money belonged to them as the surviving joint tenants. The claimants subsequently stipulated that they had no claim to the certificate account. Though they attempted to withdraw this stipulation in a post-trial motion, the trial court denied their request.

At the hearing on the matter, the trial court allowed Lynda and William Ryberg to testify about Mary's termination of the joint tenancy. Lynda testified, and William generally reiterated, that on December 12, 1984, Mary was reviewing her financial records with Lynda and William. At one point, Mary stated that Clara's name was on the credit union account merely as the next of kin. When Lynda told her that Clara was a joint tenant in the account, Mary said that it was her money alone, that a mistake had been made, and that she did not want anyone else's name on the account. William and Mary then composed the above-quoted letter, which William typed and Mary read and signed.

Lynda also testified that after her stroke, Mary sometimes was confused about financial matters. However, when Lynda would explain the transactions to her, Mary seemed to understand.

The trial court found that the estate had not rebutted by clear and convincing evidence the presumption that Mary had the required donative intent when she created the joint account. It further found, however, that Mary had effectively terminated the rights of the other joint tenants with her December 12, 1984, letter.

On appeal, the claimants first argue that the court erred in finding that Mary terminated their rights to the funds in the joint account. They contend that the joint-share agreement did not authorize one tenant to unilaterally terminate the rights of the other tenants.

■ It is well established in Illinois that an agreement creating a joint account governs the rights of the parties thereto. (*Paskas v. Illini Federal Savings & Loan Association* (1982), 109 Ill. App. 3d 24, 440 N.E.2d 194.) An instrument creating a joint account under the statutes presumably speaks the whole truth, and one seeking to go behind the terms of the agreement has the burden of establishing that

its effect was not intended. 109 Ill. App. 3d 24, 440 N.E.2d 194.

■ The last paragraph of the instant joint-share agreement stated that the authority of the credit union could not be terminated "by said owners, or any of them" except by written notice. Accordingly, it expressly provided for termination of the credit union's authority over the money by any one of the tenants. Since by law the agreement also governed the rights of the tenants among themselves, and since the claimants failed to establish that the plain meaning of the agreement did not express the parties' true intentions, the trial court properly ruled that Mary could unilaterally terminate the joint account.

The claimants next argue that the trial court's determination that Mary competently and knowingly terminated the joint-share account was against the manifest weight of the evidence.

■ The burden of proving mental incompetence is on the party seeking to set aside a transaction. (*Eslick v. Montgomery* (1972), 3 Ill. App. 3d 447, 278 N.E.2d 412.) Persons of mature age are presumed to be mentally competent; their incompetence cannot be inferred merely from old age, physical illness or defective memory. (3 Ill. App. 3d 447, 278 N.E.2d 412.) Impairment of the mind incident to old age and disease will not invalidate a transaction so long as the person in question was able to comprehend the nature of the transaction and to protect her interests. 3 Ill. App. 3d 447, 278 N.E.2d 412.

■ In the instant case, the evidence tending to establish that Mary was incompetent included her age, her stroke, her confusion over certain matters, and her failure to include the names of the claimants in her letter requesting the removal of the joint tenants. As noted in *Eslick*, age and illness are not sufficient by themselves to establish incompetence. Additionally, Lynda Ryberg explained that Mary was confused not in a general sense, but only about specific financial matters. Lynda noted that when she explained the financial transactions to her, Mary appeared to understand. Mary's failure to name the claimants in her December 12, 1984, letter is not especially probative of mental incompetence, since their names never appeared on any of the credit union statements due to a lack of space. Further, Lynda's and William's testimony concerning Mary's state of mind on December 12, 1984, tended to show that she was competent and understood the nature and effect of her actions. Based on the record as a whole, we find that the trial court's determination that Mary was competent when she terminated the joint tenancy agreement was not against the manifest weight of the evidence.

The claimant's third argument on appeal is that the trial court

erred in allowing Lynda and William to testify regarding Mary's execution of the December 12, 1984, letter. Specifically, they contend that the Dead Man's Act (Ill. Rev. Stat. 1987, ch. 110, par. 8—201) prohibits testimony from parties who have a direct pecuniary interest in the outcome of the litigation.

In *Bank of Viola v. Staley* (1985), 131 Ill. App. 3d 531, 475 N.E.2d 1110, this court addressed a similar issue and held that even where one has an interest in an estate, one may testify on behalf of the estate. Here, the claimants brought suit against the estate, seeking to reduce its assets. Though Lynda was a legatee under the will, she defended the suit as executor. She and William testified on behalf of the estate, with the objective of protecting the estate's assets. Accordingly, their testimony was not barred by the Dead Man's Act.

Our decision renders moot the claimant's argument regarding the trial court's denial of their post-trial motion to withdraw their stipulated release of any claim to the certificate account. Likewise, the estate's cross-appeal of the court's finding that it had not rebutted the presumption of donative intent, and the claimant's motion to dismiss the cross-appeal, are rendered moot.

The judgment of the circuit court of Rock Island County is affirmed.

Affirmed.

HEIPLE and BARRY, JJ., concur.