**Richard W. BARBER, Personal Representative of the Estate of Barbara W. Reese, Deceased, Plaintiff,**

v.

**John J. RUTH, Defendant,**

and

**Lucille A. Ruth, Counterclaim Plaintiff and Defendant.**

**No. 90 C 6794.**

United States District Court, N.D. Illinois, E.D.

Oct. 2, 1991.

Thomas Weithers, Lewis, Overbeck & Furman, Chicago, Ill., for plaintiff-counter defendant.

Franklin H. Top, III, James E. Spiotto, Wendy A. Grossman, Chapman & Cutler, Chicago, Ill., for defendant-counter plaintiff.

## MEMORANDUM OPINION
## AND ORDER

ASPEN, District Judge:

This action stems from the administration of the estate of Barbara W. Reese ("Reese"). Plaintiff Richard W. Barber, in his capacity as personal representative of Reese's estate, brought suit against John and Lucille Ruth to recover funds allegedly removed by Lucille Ruth ("Ruth") from a joint bank account held by her and the decedent. Currently before the court is (1) Barber's motion to dismiss Ruth's amended counterclaim; (2) Ruth's motion in limine to

exclude testimony of Marion Charrier, Rodney Charrier, and Beverly Nickel; and (3) Barber's motion in limine to determine the admissibility into evidence of Barbara Reese's diaries. We address each motion in turn.

## I.  Motion to Dismiss Standard

A motion to dismiss should not be granted unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also Beam v. IPCO Corp.*, 838 F.2d 242, 244 (7th Cir.1988); *Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir.1985), *cert. denied*, 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). We take the "well-pleaded allegations of the complaint as true and view them, as well as reasonable inferences therefrom, in the light most favorable to the plaintiff." *Balabanos v. North Am. Inv. Group, Ltd.*, 708 F.Supp. 1488, 1491 n. 1 (N.D.Ill.1988) (citing *Ellsworth*).

## II.  Background

Before turning to the details of the contested transaction, a brief introduction to the parties and their interrelationships is in order. In 1972, Ralph Reese, Sr. married Barbara Reese. Both brought previously acquired children to the marriage. Lucille Ruth is the natural daughter of Ralph Reese, Sr. John Ruth is Lucille's husband. Marion Charrier is the natural daughter of Barbara Reese. Rodney Carrier is Marion's husband. Beverly Nickel, a certified nurse's assistant, was employed to attend to the medical needs of Ralph Reese, Sr., from July 1985 until his death on July 25, 1986.

After the death of Ralph Reese, Sr., Reese engaged Barber on several occasions to draft a number of wills. On October 9, 1987, Reese executed a will that provided that the residual estate would be placed in trust, the income from which would be payable to her daughter, Marion Charrier, for life, and then to her grandson, John Paul Charrier, for life, after which the trust would terminate and the property remaining would be distributed to Ruth or her lineal descendants. On October 30, 1987, Reese executed another will which provided for a specific bequest of $65,000 to Ruth and provided that the testamentary trust holding the residual estate would terminate upon the death of Marion Charrier, at which time the trust corpus would be distributed to Ruth or her lineal descendants. Finally, on April 5, 1988, Reese executed yet another will drafted by Barber. This will removes Ruth and her descendants as the beneficiaries of the remainder of the testamentary trust, naming instead Nickel and her descendants.

From November 18, 1986, Ruth and Reese held a joint tenancy money market account through Harris Trust & Savings Bank in Chicago. The account agreement explicitly states that "[i]f this Account is held in the name of two or more persons, the form of ownership is Joint Tenancy with Right of Survivorship unless otherwise specified on your Money Market Account signature card." The signature card contains no other specification. All deposits made into the account were derived from funds belonging to Reese. Ruth contends that, at the time the account was established, it was Reese's intention that the money she deposited was to be available to her during her lifetime, should she need it, and that, upon her death, the money would belong to Ruth and her children. Reese died on June 27, 1989 at her home in Largo, Florida. On July 3, 1989, Ruth closed the account, withdrawing $251,-667.79.

## III.  Ruth's Amended Counterclaim

Barber, as administrator of Reese's estate, brought a two-count complaint against Ruth claiming that the funds formally in the account, and now in Ruth's possession, are the property of the estate, subject to the last will and testament of Reese executed on April 5, 1988.[1] In response, Ruth filed three counterclaims against Barber. Each was based on her

---

1. Count I of Barber's complaint, based on "detinue," was dismissed because that theory does not allow the recovery of a purely monetary obligation allegedly owed by a defendant to a plaintiff. *Barber v. Ruth*, No. 90–6794, 1991 WL 32707 (N.D.Ill. Mar. 1, 1991).

foregone opportunity to contest Reese's last will and testament, resulting from Barber's alleged false representation to her that any challenge to the probate of the April 5, 1988 will would be futile. Specifically, Ruth claimed that Barber's false representation constituted a breach of fiduciary duty (Count I), fraud (Count II), and negligent misrepresentation (Count III). In essence, Ruth's original counterclaim challenged the legitimacy of the April 5, 1988 will, which Barber submitted for probate in Florida. We granted Barber's motion to dismiss Count I of the counterclaim, but denied his motion to dismiss Counts II and III. *Barber v. Ruth*, No. 90–6794, 1991 WL 134185 (N.D.Ill. July 12, 1991) [hereinafter *"Barber I"*].

After complete discovery, Ruth amended her counterclaim to allege a single count for breach of fiduciary duty. Her amended counterclaim, now founded on the premise that the will probated in Florida is valid, alleges that Barber breached "a fiduciary duty [owed] to the estate of Barbara Reese and its beneficiaries, including Lucille Ruth, to protect the estate and to insure the distribution of funds therefrom in accordance with the testamentary intent of Barbara Reese." Barber now moves to dismiss the amended counterclaim, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted. For the reasons that follow, we grant Barber's motion.

■ As we previously noted in *Barber I*, Barber possesses a fiduciary duty to distribute Reese's estate in accordance with the terms of her last will and testament. Fla.Stat.Ann. § 733.602(1) (West 1989).[2] While Ruth fails to specify in her amended complaint the specific acts of Barber which constitute a breach of this duty, an examination of Ruth's response to the motion to dismiss makes clear that Ruth's dissatisfaction with Barber's performance as personal representative stems from the filing of the instant suit. Ruth contends that the prosecution of this action, seeking to retrieve the funds formerly contained in the money market account despite Barber's knowl-

edge of a contrary testamentary intent, amounts to a breach of his fiduciary duty. We disagree.

Florida law clearly states that a "personal representative shall take all steps reasonably necessary for the management, protection, and preservation of the estate until distribution ... [including] maintain[ing] an action to recover possession of property." Fla.Stat.Ann. § 733.607 (West Supp.1991). As such, there is no question that the mere filing of an action to recover controverted funds, without more (*i.e.* improper or bad faith exercise of power), does not amount to a breach of Barber's fiduciary duty. The facts as pleaded by Ruth are insufficient to support an inference that Barber's action as personal representative was improper or that the commencement of this action was undertaken in bad faith. Indeed, given Reese's failure to make a specific bequest of the money market account, Barber's position that the funds constitute a portion of the residual estate to be distributed according to the explicit and unambiguous terms of the April 5, 1988 will is patently reasonable. Whether Barber ultimately succeeds in his suit is an entirely different question, irrelevant to the issue of fiduciary duty. *See In re Estate of Pearce*, 507 So.2d 729 (Fla. App.1987) (erroneous attempt by the co-personal representative to appeal the probate court's order on the will is not a breach of his fiduciary duty).

Likewise, the extent to which Barber's prosecution of this action benefits the residual beneficiaries at the expense of Ruth is of no consequence to the issue of whether Barber breached his fiduciary duty. As Barber correctly points out, were this court to conclude that Barber's fiduciary duty includes refraining from bringing suit against Ruth to recover the disputed funds, a personal representative would be unable to recover any estate asset unlawfully in the possession of any beneficiary. Such a result clearly contradicts the plain language of Fla.Stat.Ann. § 733.607, as discussed above. There being nothing improper about the institution of this action,

---

**2.** It is undisputed that Florida law applies to this   action.

we find no basis for concluding that Barber breached any fiduciary duty owed to Ruth.

### IV. Testimony of Marion Charrier, Rodney Charrier and Beverly Nickel

In order to regain the funds from the money market account, Barber must rebut the presumption of donative intent. To meet this burden, he has alleged that Reese established the account for her "convenience." In support of this contention, Barber seeks to introduce the testimony of Marion Charrier, Rodney Charrier, and Beverly Nickel, all of whom will testify as to conversations they allegedly had with Reese regarding her intent when establishing the account. Ruth seeks to exclude this testimony as incompetent under the Illinois Dead–Man's Act, Ill.Rev.Stat. ch. 110, para. 8–201. For the reasons that follow, we deny Ruth's motion.

Because the issue of whether Ruth is the rightful owner of the funds previously contained in the money market account is one which will be determined in accordance with Illinois law, this court will look to Illinois law to determine the competency of any witness whose testimony is offered in connection with this case. *See* Fed.R.Evid. 601. The Illinois Dead–Man's Act provides in pertinent part:

> In the trial of any action in which any party sues or defends as the representative of a deceased person or person under a legal disability, no adverse party or person directly interested in the action shall be allowed to testify on his or her own behalf to any conversation with the deceased or person under legal disability or to any event which took place in the presence of the deceased or person under legal disability, except in the following instances: ...

Ill.Rev.Stat. ch. 110, para. 8–201 (Supp. 1991).

■ Ruth, however, lacks standing to avail herself of the Dead–Man's Act. "The only parties entitled to object to the testimony of an interested witness under this statute are adverse parties suing as representatives of the deceased or incompetent persons." *Harry W. Kuhn, Inc. v. State*

*Farm Mut. Auto. Ins. Co.*, 201 Ill.App.3d 395, 403, 147 Ill.Dec. 45, 51, 559 N.E.2d 45, 51 (1st Dist.1990) (citing *Brownlie v. Brownlie*, 351 Ill. 72, 183 N.E. 613 (1932)). Here, Ruth is not suing or defending as a representative of the deceased. Rather, she is suing on her own behalf, and objecting to the testimony of two residual legatees and a spouse.

■ Moreover, to the extent that the three witnesses in question truly are interested witnesses, that fact alone does not serve to bar their testimony under the Dead–Man's Act. "The Illinois cases are clear that the statute is not intended to exclude testimony which would augment the estate." *Greene v. United States*, 447 F.Supp. 885, 890 (N.D.Ill.1978); *see In re Estate of Gruske*, 179 Ill.App.3d 675, 128 Ill.Dec. 510, 534 N.E.2d 692 (3d Dist.), *appeal denied*, 126 Ill.2d 559, 133 Ill.Dec. 668, 541 N.E.2d 1106 (1989); *Bank of Viola v. Staley*, 131 Ill.App.3d 531, 86 Ill.Dec. 731, 475 N.E.2d 1110 (3d Dist.1985); *Continental Casualty Co. v. Maxwell*, 127 Ill.App. 19 (4th Dist.1906). Although Beverly Nickel and Marion Charrier, as residual beneficiaries, and Rodney Charrier, as Marion's spouse, would benefit financially if Barber were successful in this litigation, they are not being asked to testify on their own behalf. Rather, they would be called in support of the estate's claim to the funds previously contained in the money market account. The testimony of these potential witnesses, if otherwise competent, material, and relevant, is neither barred by the Illinois Dead–Man's Act, nor operates as a waiver of that statute.

### V. Reese's Diaries

■ Barber presently seeks an order finding that the admission into evidence of the diaries of Barbara Reese, if otherwise competent, material, and relevant, is neither barred by the Illinois Dead–Man's Act, Ill.Rev.Stat. ch. 110, para. 8–201, nor operates as a waiver of that statute. Reese's diaries consist of entries authored by both Reese herself and Beverly Nickel. Ruth concedes that the entries made by Reese and those entries made by Nickel which

"describe events of which she has personal knowledge" are not barred by the Dead–Man's Act. Ruth, however, contends that the Act applies to those diary entries written by Nickel based solely upon conversations with Reese concerning her lack of donative intent when establishing the account.

As explained above, Ruth may not avail herself of the Dead–Man's Act. Additionally, as the admissibility of the Nickel's entries is contingent on the competency of her testimony, *see Muka v. Estate of Muka*, 164 Ill.App.3d 223, 115 Ill.Dec. 262, 517 N.E.2d 673 (2d Dist.1987), we find no justification for invoking the statutory exclusion to prohibit this evidence offered on behalf of the estate.

## VI.   Conclusion

For the reasons as set forth above, we grant both Barber's motion to dismiss the amended counterclaim and his motion in limine regarding the Reese diaries. We deny Ruth's motion in limine to exclude testimony of Marian Charrier, Rodney Charrier, and Beverly Nickel. It is so ordered.