DAVID WOODALL, Plaintiff-Appellee, v. GEOFFREY BOORAS *et al.*, Defendants-Appellants.

Second District    No. 2—88—0982

Opinion filed May 9, 1989.

John P. McTigue, of McKenna, Storer, Rowe, White & Farrug, of Wheaton, for appellant Economy Fire and Casualty Company.

Wiley W. Edmondson, of Brady, McQueen, Martin, Collins & Jensen, of Elgin, for appellee.

JUSTICE INGLIS delivered the opinion of the court:

Plaintiff, David Woodall, filed an action in the circuit court of Kane County seeking a declaration that the policy of automobile insurance issued by defendant, Economy Fire & Casualty Company (Economy), to Jesus Alanis, Sr. (Alanis Sr.), provided coverage to Geoffrey Booras, who was involved in an automobile accident with Woodall while driving a vehicle owned by Alanis Sr. Economy declined coverage based on the assertion that Booras did not have permission to use the vehicle. After a bench trial, the trial judge entered judgment in favor of Woodall and against Economy. This appeal followed. We reverse.

This case turns upon the application of an "omnibus clause" contained in a policy of automobile liability insurance, which extends coverage to persons in addition to the named insured. Plaintiff suffered personal injuries when the vehicle in which he was riding was struck by a pickup truck driven by Booras. The pickup truck was owned by

Jesus Alanis, Sr., who had given permission to his son, Jesus Alanis, Jr. (Alanis Jr.), to operate the truck and from whom Booras had taken the truck without permission.

Economy issued a policy of automobile liability insurance covering the pickup truck which Booras was driving at the time of the accident involving Woodall. The policy contained an omnibus clause, providing:

> "Anyone else is an insured while using with your permission a covered auto you own."

It is undisputed that Booras did not have permission to use the pickup truck at the time of the accident, but it was also undisputed that the insured, Alanis Sr., had given his son, Alanis Jr., permission to use the pickup truck.

Alanis Jr. is 27 years old and had known Booras since seventh grade. The two were friends, had gone to school together, and had periodically seen each other socially over the years. At the time of the accident, Booras lived with his parents. Alanis Jr. had been to the home of Booras' parents, and Booras had been to Alanis Jr.'s parent's home. The two had worked for Chuck McCarthy doing landscaping.

Booras called Alanis Jr. about going to McCarthy's residence to pick up a barbecue grill. They stopped at a McDonald's restaurant on the way to McCarthy's residence. Booras talked to a girl who worked there. As they left McDonald's, Booras told Alanis Jr. that he liked the girl. Alanis Jr. overheard Booras asking the girl what time she got off work.

When they arrived at McCarthy's residence, McCarthy was working on some "bee houses." The two went with McCarthy in McCarthy's pickup truck to get supplies for the "bee houses." Later that afternoon, they decided to have a cookout at McCarthy's. Alanis Jr. and Booras drove to the Jewel in Elgin to pick up meat for the cookout. After they returned from the store, Booras started up the coals. McCarthy's girlfriend was also present, and they had a pork chop for everyone.

Alanis Jr. testified that throughout the afternoon, Booras was eager to return to the McDonald's in Elgin to pick up the girl. He testified that at about "3:00, 3:30 or so" Booras asked Alanis Jr., "Could you take me over to McDonald's? I want to pick the girl up." At that point, Alanis Jr. was fishing at a pond located on the premises and responded "[a]s soon as I get done fishing, I will take you there." Booras mentioned going to get the girl at McDonald's two or three times. At one point, Booras even got into the Alanis pickup truck and started it. Alanis Jr. told him to get out of the truck and that, "[a]s soon as I am done, I will take you to McDonald's to pick up the girl."

Booras then went back to cooking the meat. Shortly thereafter, when Alanis Jr. was fishing 80 yards from the pickup, Booras drove off in the pickup truck. Alanis Jr. dropped his pole and ran after the truck. Alanis Jr. was to the side of the truck, while Booras was looking straight toward the street.

Booras had left his meat still on the grill. Twenty to thirty minutes later, they heard sirens. The accident occurred on Plank Road, on the way to Elgin, where the McDonald's was located. The pickup truck was "totalled" in the accident, with the cab knocked off the frame and the engine out.

Alanis Jr. testified that when Booras drove off in the pickup truck, Alanis Jr. believed that he was going to the McDonald's to pick up the girl and bring her back.

It was further stipulated that neither Booras nor Woodall would testify at trial but, if called as a witness, Booras would have testified that he had no recall about anything that happened on the day of the occurrence.

Pursuant to a request to admit facts it was uncontested that Alanis Sr. did not give his permission to Booras to use the vehicle in question, nor did Alanis Jr. give his permission to Booras; that Booras took the vehicle without obtaining the permission of either Alanis Sr. or Alanis Jr; that Booras took the vehicle without notifying either Alanis Sr. or Alanis Jr. that he intended to do so and that neither of the Alanises had ever previously given permission to Booras to drive the vehicle in question.

Plaintiff acknowledges in his brief that (1) it is undisputed that Booras took the subject vehicle over the express objection of Alanis Jr. and clearly without either the express or implied permission of Alanis Sr. and (2) it is further undisputed that Booras was told on at least two occasions on the day of the occurrence that he was not to drive the subject vehicle.

The trial judge in rendering his decision stated, "clearly he [Booras] took it without anybody's permission and over the protests of Alanis, Jr. However, I don't think it raises itself to the level of conversion or conduct that would be described in the meaning, 'or the like,' in these cases, and, accordingly, I will find there is coverage under the facts of this case."

Defendant maintains that the conduct of Booras, supported by the uncontested facts, amounted to a "theft, conversion or the like." Plaintiff contends that the "initial permission doctrine" provides coverage for third parties who drive the vehicle after initial permission has been given to the original permittee, even where the third party

does not have permission to use the vehicle. The trial court found Booras had no permission, but his conduct did not amount to a conversion or the like.

■ The issue presented is a question of law. Did the trial judge properly apply or interpret the "theft, tortious conversion or the like" exception to the "initial permission doctrine," considering the uncontested facts before it? As an appellate court, we take a deferential approach to the findings made below on disputed factual issues; but the scope of our review on questions of law is independent, not deferential. The facts which we find controlling are not disputed, and, in this case, the legal result of those undisputed facts is solely a question of law. *Havens v. Miller* (1981), 102 Ill. App. 3d 558, 567.

We first consider *Maryland Casualty Co. v. Iowa National Mutual Insurance Co.* (1973), 54 Ill. 2d 333. In *Maryland Casualty*, the insurance company issued a policy to Robert Smythe, as the named insured. (54 Ill. 2d at 335.) The policy contained an omnibus clause extending liability coverage to "any other person using such automobile, with the permission of the named insured." (54 Ill. 2d at 335.) Smythe's son, who had permission to drive the vehicle, allowed a friend to drive it. (See 54 Ill. 2d at 337.) The friend, while driving the vehicle, was involved in an accident in which others were injured. (54 Ill. 2d at 337.) Smythe had told his son not to permit anyone else to drive the vehicle. 54 Ill. 2d at 337-38.

The court noted that Illinois followed the rule that if the named insured initially gave permission to another to use the insured vehicle, a deviation from the authorized use did not serve to terminate the permission. (54 Ill. 2d at 341.) The court followed the reasoning of the supreme court of New Jersey in *Odolecki v. Hartford Accident & Indemnity Co.* (1970), 55 N.J. 542, 264 A.2d 38, wherein it was stated:

> " 'We fail, however, to see the distinction between a case where a first permittee exceeds the scope of permission in terms of time, place, or purpose, and a case where he exceeds the scope of permission in terms of use of the vehicle by another.' " (*Maryland Casualty*, 54 Ill. 2d at 341, quoting *Odolecki*, 55 N.J. at 549-50, 264 A.2d at 42.)

The court found that once initial permission had been given by the named insured coverage was fixed " 'barring theft or the like.' " (*Maryland Casualty*, 54 Ill. 2d at 341, quoting *Odolecki*, 55 N.J. at 550, 264 A.2d at 42.) The court therefore held that coverage was extended to the third party. *Maryland Casualty*, 54 Ill. 2d at 343.

The doctrine of initial permission was again considered in *United States Fidelity & Guaranty Co. v. McManus* (1976), 64 Ill. 2d 239. In

*McManus*, the insured had left her car with a friend to whom she had given permission to drive the car. (64 Ill. 2d at 241.) The friend's brother used the car and was involved in an accident. (64 Ill. 2d at 240.) It was undisputed that the insured had not given her friend's brother permission to use the car. (64 Ill. 2d at 241.) However, the friend had given her brother permission to use the car on the day before the accident, and it did not appear that anything was said as to whether the brother did or did not have permission to use the car again. 64 Ill. 2d at 241-42.

In finding that the brother was covered, the court stated:

> "We see no difference in principle between a situation where the first permittee exceeds the scope of his authority, as in *Maryland Casualty*, and the present situation where the first permittee has allegedly failed to grant permission to the operator of the vehicle. Adoption of the plaintiff's position would represent a departure from the broad 'initial permission' rule adopted in *Maryland Casualty*, and it would propel the courts into further prolonged collateral inquiries of the sort which that decision sought to eliminate. We adhere to the view expressed in *Maryland Casualty* that where an insurer elects to include in its policy a broad provision extending liability coverage to persons operating or using a car with the permission of the owner, a further grant of permission from the initial permittee need not be shown in order to invoke the coverage." (64 Ill. 2d at 243.)

However, the court went on to state that the insurer was not liable where it could be proved that the operator of the car had obtained possession by a theft or a tortious conversion. 64 Ill. 2d at 243.

In *Western States Mutual Insurance Co. v. Verucchi* (1977), 66 Ill. 2d 527, the court again considered the initial permission doctrine. In *Verucchi*, Robert Elmendorf, the 16-year-old son of the named insured, William Elmendorf, was using his father's car with the father's express permission and was accompanied by two friends, one of whom was John Verucchi, the defendant in the declaratory judgment action. (66 Ill. 2d at 529.) The three boys were close friends and frequently went out together socially. (66 Ill. 2d at 529.) Robert parked the car in a parking lot across the street from a drive-in restaurant. (66 Ill. 2d at 529.) He removed the keys from the ignition and left them in the car. (66 Ill. 2d at 529.) After staying at the drive-in for a period of time, the three decided to leave. (66 Ill. 2d at 529.) John Verucchi and the other boy returned to the car and were waiting by the car while Robert Elmendorf continued to talk to one of his friends across the

street at the drive-in. (66 Ill. 2d at 529.) At some point, Verucchi found the car keys and attempted to drive across the street to pick up Robert at the drive-in parking lot. (66 Ill. 2d at 529-30.) Because heavy traffic prevented him from going directly to the lot, Verucchi attempted to drive around the block to return to the drive-in. (66 Ill. 2d at 530.) Three or four blocks away he collided with another vehicle. (66 Ill. 2d at 530.) Verucchi had never been told that he either could or could not drive the automobile in question. (66 Ill. 2d at 530.) William Elmendorf had instructed his son never to permit anyone else to drive the car. (66 Ill. 2d at 530.) Additionally, there was evidence that at least one other friend of Elmendorf had driven the subject vehicle. 66 Ill. 2d at 530.

The court in *Verucchi* found that the rationale of both *McManus* and *Maryland Casualty* was to bring simplicity to what had become a complex area of the law. (66 Ill. 2d at 531.) The court further stated that it was not the purpose of *McManus* to substitute inquiries into the technicalities of a tortious conversion for inquiries into the issue of permission. (66 Ill. 2d at 532.) The court stated that the term "tortious conversion" as used in *McManus* meant "a substantial interference with or deprivation of an owner's rights in his vehicle." (66 Ill. 2d at 532.) The court continued:

> "In our judgment, insurance coverage is provided under the rule in *McManus* unless the subsequent user of the vehicle gained possession of it with the intent to permanently (theft) or indefinitely (tortious conversion) deprive the owner or the initial permittee of his rights therein." 66 Ill. 2d at 532.

See also *American County Insurance Co. v. Wilcoxon* (1989), 127 Ill. 2d 230, 242-43.

The court then held:

> "In this case it seems apparent that John Verucchi's intent was merely to drive the Elmendorf automobile across the street a total distance of 50 to 100 feet, and there await Robert Elmendorf—*an act not entirely for his own benefit*. Even though he could not make a left turn and heavy traffic forced him to drive further, his intent remained the same, *i.e.*, to get into the Igloo parking lot and await Robert Elmendorf. *There is no indication of any intent to deprive William or Robert Elmendorf of the car for even a brief period of time*." (Emphasis added.) *Western States Mutual Insurance Co. v. Verucchi* (1977), 66 Ill. 2d 527, 532.

■ We find that the instant case is distinguishable from *Maryland Casualty*, *McManus*, and *Verucchi*. In *Maryland Casualty*, the

driver had at least implicit permission to drive the car. (See *Maryland Casualty*, 54 Ill. 2d at 337.) In *McManus*, the driver had been given permission to drive the car on a previous occasion, and nothing was said about permission on the day of the accident. (*McManus*, 64 Ill. 2d at 241-42.) And, in *Verucchi*, there was nothing said about permission (*Verucchi*, 66 Ill. 2d at 530), and the driver's intent was to drive a total distance of 50 to 100 feet partially for the benefit of the individual who had been given permission (66 Ill. 2d at 532). In contrast, the facts in the instant case show that Alanis Jr. ordered Booras out of the truck a short period before Booras actually took the truck. The evidence also showed that Alanis Jr. ran after the truck when Booras did take it. In short, the driver in the instant case was specifically told not to drive the vehicle. This case is also distinguishable from *Verucchi* because, in the instant case, the driver's intent was to deprive both the insured and the initial permittee for a greater period of time than was the case in *Verucchi*. In the instant case, Booras intended to use the vehicle long enough to go into town and pick up a girl from the McDonald's. It is further clear that this action was not in any way for the benefit of Alanis Jr. and is equally clear that it involved a distance of greater than 50 to 100 feet as in the *Verucchi* case.

■ Tortious conversion is " '[a]ny unauthorized act by which an owner is deprived of his property permanently or indefinitely, or the exercise of dominion over property inconsistent with the rights of the owner, is a conversion.' " *Verucchi*, 66 Ill. 2d at 531, quoting *Knight v. Seney* (1919), 290 Ill. 11, 15.

■ In the instant case, Booras was unauthorized by either the owner or first permittee; his act deprived the owner and first permittee of the pickup truck for an indefinite time, and he clearly exercised dominion over the pickup truck inconsistent with the rights of the owner and first permittee. We thus find that the conduct of Booras amounted to substantial interference and deprivation of the owner's rights in his vehicle. (See *Verucchi*, 66 Ill. 2d at 532.) Consequently, we find that the circuit court was incorrect in ruling that defendants' policy provided coverage. The judgment of the circuit court is reversed.

Reversed.

NASH and REINHARD, JJ., concur.