MELVIN R. SALKELD, JR., Plaintiff-Appellant, v. V.R. BUSINESS BROKERS, INC., *et al.*, Defendants-Appellees.

Second District   No. 2—91—0474

Opinion filed July 21, 1992.

Alfred Y. Kirkland, Jr., and Marios N. Karayannis, both of Brady, McQueen, Martin, Collins & Jensen, of Elgin, for appellant.

Robert L. Caplan, of Clarendon Hills, for appellees The Buffer Zone, Inc., Innovative Concepts, and Joseph P.S. Licari.

Arthur R. Ehrlich and Gerald A. Goldman, both of Goldman & Marcus, of Chicago, for other appellees.

JUSTICE GEIGER delivered the opinion of the court:

This is a second appeal in a case where the plaintiff, Melvin R. Salkeld, Jr., has alleged common-law fraud and violations of the Franchise Disclosure Act of 1987 (the Franchise Act) (Ill. Rev. Stat. 1991, ch. 121½, par. 1701 *et seq.*) and the Consumer Fraud and Deceptive Business Practices Act (the Consumer Fraud Act) (Ill. Rev. Stat. 1991, ch. 121½, par. 261 *et seq.*). The cause relates to the plaintiff's "sublicensing agreement" to sell a product called "Cocktails Naturally."

*Salkeld v. V.R. Business Brokers* (1989), 192 Ill. App. 3d 663) (*Salkeld I*), our prior decision in this case, includes a thorough recounting of the facts. Here we include only those facts essential to an understanding of the issues now before us. The facts are as follows. The plaintiff paid $25,000 under a "sublicensing agreement" made with the defendant Innovative Concepts, a division of the defendant The Buffer Zone, Inc. Of that amount, $7,500 would be paid to the sales broker, the defendant Bantam Investment Group. The plaintiff was, then, to be provided a sales territory and Innovative Concepts' advice and guidance to operate a business to distribute and sell "Cocktails Naturally." After several months of financially unsuccessful operation of his "Cocktails Naturally" business, the plaintiff brought this suit.

In the first trial, at the close of the plaintiff's evidence, the defendants moved for a directed verdict. The court entered directed

verdicts in favor of the defendants on the common-law fraud counts. It also found in favor of the defendants on the remaining claims.

In the first appeal, we affirmed the lower court in part. On the Franchise Act claim, however, we reversed and remanded as to all the defendants except American Triad Corporation. We ordered that, on remand, the trial court should proceed with consideration of those claims as though it had originally denied the defendants' motion for a directed finding. (*Salkeld I*, 192 Ill. App. 3d at 678.) On the fraud claims, we reversed and remanded for further proceedings as to the defendants The Buffer Zone, Inc., Innovative Concepts, and Joseph P.S. Licari.

On remand, the trial court began by considering only the plaintiff's count I, the Franchise Act claims. After completion of the second defense witness' testimony, the court "dismissed," *sua sponte*, the defendants V.R. Business Brokers, Inc. (V.R.), and Robert Contaldo. At the close of the trial, the court entered judgment against the plaintiff as to each remaining defendant.

The court stated the following reasons for its judgment that the Franchise Act did not apply: (1) the defendants had no control over the product selling price; (2) there were no special pricing or discount plans; (3) there was no mandate for the plaintiff to use available merchandising devices or sales or display equipment; (4) there was no mandate for the plaintiff to use the suggested sales technique; (5) there was no mandate that the plaintiff participate in referenced advertising; and (6) the defendants had no power of direction over the operating control of the plaintiff's business. The court also mentioned that, according to the defendants' materials, it was recommended that the plaintiff not follow the suggested sales technique, but, rather, make the sales approach more personal.

After entering judgment for the defendants and against the plaintiff on the Franchise Act claims, the court granted the plaintiff a voluntary nonsuit as to the remainder of the complaint. The plaintiff brought this appeal.

The first argument which we address on appeal is the plaintiff's objection to the trial court's "dismissal" of the defendant V.R. In the proceedings on remand, the second defense witness was Brad Bueerman, chief operating officer of V.R. At the conclusion of Bueerman's testimony, which covered V.R.'s business relations with its franchisee's local offices through which the agreement at issue in this case was brokered to the plaintiff, the trial court *sua sponte* found inadequate evidence to "bring in" V.R. It "disposed of" that defendant, as well as the defendant Robert Contaldo. There was no contemporane-

ous argument on the matter. The plaintiff subsequently objected to V.R.'s dismissal when he moved for a mistrial as to V.R.

On appeal, the plaintiff argues that the court's "dismissal" of V.R. was error. He emphasizes that V.R. publishes and distributes materials for its franchisees' sale of franchises. It was one of those V.R. forms that was a binding document in this case; on it the contracting broker signed as "V.R. Business Brokers." According to the plaintiff, in these circumstances V.R. cannot deny liability under the Franchise Act. In the trial court, the plaintiff's argument against the court's *sua sponte* "dismissal" of V.R. emphasized that the "dismissal" order came before the plaintiff had an opportunity to present rebuttal evidence and closing argument. On appeal, none of the defendants has addressed this issue.

■ The Code of Civil Procedure clearly provides authority for a trial court, in the proper case, to grant an individual defendant's motion for judgment at the close of the plaintiff's case. (Ill. Rev. Stat. 1991, ch. 110, par. 2—1110.) It also clearly provides for a court, in the proper case, to grant a motion or to reserve a ruling to direct a jury verdict at the close of the evidence. (Ill. Rev. Stat. 1991, ch. 110, par. 2—1202(a).) On the other hand, we are aware of no authority for the trial court to "dismiss" *sua sponte* a defendant or to grant a defendant judgment in the midst of the defense presentation of evidence. Further, we note that a trial court's authority to act *sua sponte* is limited by the restriction that it may do so only in order to do justice between the parties. See *Welch v. Ro-Mark, Inc.* (1979), 79 Ill. App. 3d 652, 656.

■ In *Salkeld I*, after we examined the evidence surrounding the plaintiff's Franchise Act claims, we reversed the trial court's judgment for the defendants which was granted at the end of the plaintiff's case. Our remand for retrial of the Franchise Act claims included a remand as to V.R. Given our mandate for retrial, which the trial court was obligated to follow (*Bradley v. Howard Hembrough Volkswagon, Inc.* (1980), 89 Ill. App. 3d 121, 124), we do not find that the court here was doing justice between the parties when it "dismissed" V.R. from the proceedings.

The defendants have not noted, and we do not find, anything in the evidence or law applicable to this case to support the trial court's "dismissal." The plaintiff presented sufficient evidence to be entitled to a full trial as to V.R. (See *Salkeld I*, 192 Ill. App. 3d at 678.) That entitlement included a possible rebuttal and the right of closing argument. (See 134 Ill. 2d R. 233; *Hall v. Northwestern University Medical Clinics* (1987), 152 Ill. App. 3d 716, 721; *National Bank v. Olson*

(1986), 143 Ill. App. 3d 965, 969.) We reverse the trial court's determination on this matter.

The plaintiff's primary argument is that we should reverse the trial court's judgment that the Franchise Act does not apply to this case. He first argues that, under *Salkeld I*, the Franchise Act applies as a matter of law. The defendants argue that the *Salkeld I* decision did not direct the trial court to find that the Franchise Act applies to this case. They also argue that the court's decision that the Act did not apply was not against the manifest weight of the evidence.

In *Salkeld I*, we concluded that the plaintiff had presented a *prima facie* case for damages under the Franchise Act. (*Salkeld*, 192 Ill. App. 3d at 673.) In our analysis preceding that final conclusion, we considered the several statutory requirements for a "franchise." We found that each of the statutory requirements for a "franchise" was "satisfied" by the materials in evidence. 192 Ill. App. 3d at 670-71.

Most significantly for this second appeal, we first examined the statutory requirement that a "franchise" include a "marketing plan or system." In that regard, we considered the sales manual provided to the plaintiff, with its detailing of product information and sales strategies; a document given to the plaintiff that described a "sub-licensee program" as a program in which the company is "with [the plaintiff] every step of the way"; the company's promise of support in marketing, training, advertising, and promotion; and defense testimony that the "system" referred to in the parties' agreement referred to the "Cocktails Naturally" method of mixing and pouring drinks. (192 Ill. App. 3d at 670-71.) We found that the company's representations to the plaintiff "amply satisfy the statutory requirement of the existence of a marketing plan or system [as required for a 'franchise' under the Franchise Act]." 192 Ill. App. 3d at 671.

On appellate court reversal and remand, a trial court is bound by the appellate court's determination of all questions decided and may act only in conformance with the appellate court's judgment. (*Bradley v. Howard Hembrough Volkswagon, Inc.* (1980), 89 Ill. App. 3d 121, 124.) Further, under the "law of the case" doctrine, on a second review, we are bound by the views of law announced in our prior opinion, unless the facts presented require a different interpretation. *Bradley*, 89 Ill. App. 3d at 124.

The *Salkeld I* decision clearly found that the sales materials presented in connection with the sublicensing agreement in this case sufficiently satisfied the statutory requirement for a marketing plan or system. With that finding, we did not conclude that the Franchise Act

applied as a matter of law. We did, however, find as a matter of law that, in the absence of any facts requiring a different interpretation, for example, facts found to negate the applicability of any of the materials we considered, the Act's requirement of a marketing plan or system was satisfied.

On appeal, we give deference to a trial court's findings of fact. (*Woodall v. Booras* (1989), 182 Ill. App. 3d 1096, 1100.) It is clear from the trial court's findings in this case, however, that, in reaching its judgment on remand, the court did not weigh the relevant facts and exercise its discretion. The court's judgment here did not incorporate any fact that negated or disabled the evidence upon which *Salkeld I* relied; rather, the court made a new legal finding that is not entitled to our deference (see *Woodall*, 182 Ill. App. 3d at 1100). None of the factors underlying the trial court's judgment on remand is a basis for the rejection of any material supporting our prior judgment.

We reverse the trial court's decision that the Franchise Act does not apply. In doing so, we acknowledge that the defendants correctly note that we can sustain the decision of the trial court based on any grounds found in the record. (*B.C. v. J.C. Penney Co.* (1990), 205 Ill. App. 3d 5, 15.) Nevertheless, we find nothing of record allowing us to affirm the court's decision here. It must be reversed and the cause remanded for the court to properly weigh the evidence on the factual questions it did not reach: for example, whether any of the materials we considered are incompetent evidence or whether the statutory notice requirement was satisfied here.

We note that, through their counsel Goldman and Marcus, the defendants have argued that, even if a "franchise" exists, none of the Bantam Group defendants should be liable. However, they have offered no authority for their argument, and we find it is waived. 134 Ill. 2d Rules 341(e)(7), (f); see *Nicholl v. Scaletta* (1982), 104 Ill. App. 3d 642, 647.

Based on the foregoing, the decision of the circuit court of Kane County is reversed. Because the trial court did not assess the facts at issue here, for example, the timeliness of notice and the proper form of any damages, rather than enter judgment as the plaintiff prays (see 134 Ill. 2d R. 366), we remand the cause for the court's further consideration consistent with our decision here.

Reversed and remanded.

UNVERZAGT and BOWMAN, JJ., concur.