NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (4th) 220927-U

NO. 4-22-0927

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 29, 2023
Carla Bender
4th District Appellate
Court, IL

| | |
|---|---|
| AMEREN ILLINOIS COMPANY, | ) Appeal from the |
| Plaintiff-Appellant, | ) Circuit Court of |
| v. | ) Peoria County |
| CLARENCE D. CAPPS, | ) No. 20L63 |
| Defendant-Appellee, | ) |
| v. | ) Honorable |
| PEKIN INSURANCE COMPANY, | ) Paul E. Bauer, |
| Third-Party Defendant-Appellee. | ) Judge Presiding. |

---

JUSTICE STEIGMANN delivered the judgment of the court.
Justices Turner and Harris concurred in the judgment.

**ORDER**

¶ 1     *Held:* The appellate court affirmed the judgment of the trial court (1) denying Ameren's motion for a turnover order and (2) quashing Ameren's subpoena for deposition of corporate representative in a citation proceeding initiated by Ameren because the insurance policy and deposition transcripts Ameren attached to its motion established that the policy did not extend coverage to the judgment debtor, who was a non-permissive driver of the insured vehicle.

¶ 2     In March 2020, plaintiff, Ameren Illinois Company (Ameren), filed a complaint alleging that defendant, Clarence D. Capps, negligently drove a Ford Focus into a utility truck owned by Ameren, causing significant damage to the truck. Ameren alleged a second count of negligence against Michael Toft, the owner of the Ford Focus, under an agency theory. After discovery, and after learning that Toft had insured the vehicle through Pekin Insurance Company (Pekin), Ameren voluntarily dismissed Toft from the litigation, leaving Capps as the sole defendant.

¶ 3        Capps, who was unrepresented by counsel, mounted no defense, and in December 2021, the trial court entered summary judgment in favor of Ameren, awarding Ameren a judgment against Capps in the amount of $97,676.66.

¶ 4        In June 2022, Ameren filed a citation to discover assets under section 2-1402 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1402 (West 2022)) against Pekin. As part of that citation proceeding, Ameren served upon Pekin a "Subpoena for Deposition of Corporate Representative," which directed Pekin to appear for a deposition and bring documents regarding insurance coverage for the Ford Focus.

¶ 5        In July 2022, Pekin filed a motion to quash the subpoena for deposition. In August 2022, Ameren filed (1) a response to Pekin's motion to quash and (2) a motion for a turnover order, asking the trial court to direct Pekin to "turn over" the insurance proceeds in satisfaction of Ameren's judgment against Capps.

¶ 6        In September 2022, the trial court conducted a hearing on Pekin's motion to quash and Ameren's motion for a turnover order. The parties did not present evidence, but instead relied upon their written filings and exhibits attached thereto. At the conclusion of the hearing, the court (1) granted Pekin's motion to quash the subpoena for deposition and (2) denied Ameren's motion for a turnover order.

¶ 7        Ameren appeals, arguing that the trial court erred by (1) granting Pekin's motion to quash and (2) denying Ameren's motion for a turnover order because the facts of record established that Capps was a permissive driver of the covered vehicle.

¶ 8        We disagree and affirm.

¶ 9                                    I. BACKGROUND

¶ 10                        A. The Underlying Complaint and Judgment

- 2 -

¶ 11　　　　In March 2020, Ameren filed a two-count complaint alleging separate negligence counts against Capps and Toft. The complaint alleged that in December 2017, Capps was driving a Ford Focus owned by Toft when Capps struck an Ameren utility truck, resulting in substantial damage to the truck.

¶ 12　　　　Capps *pro se* filed an answer to the complaint stating that (1) he was currently incarcerated at the Tazewell County jail, (2) he was the sole operator of the car that struck the Ameren truck, and (3) Toft was unaware that Capps was driving the car on the day of the accident.

¶ 13　　　　Toft *pro se* filed a motion to dismiss the complaint pursuant to section 2-615 of the Code (*id.* § 2-615), alleging that he was not the owner of the car on the day of the accident because he had sold it to Beverly Turner in November 2017. Ameren responded that Toft's denial of ownership was not a proper basis for dismissal under section 2-615 because the complaint sufficiently pleaded an agency relationship between Toft and Capps. Ameren attached to its response a police report showing that the car Capps was driving at the time of the accident was owned by Toft and insured by Pekin. (We note that the record does not contain the trial court's ruling, but we presume the motion to dismiss was denied because Toft subsequently retained counsel.)

¶ 14　　　　In May 2020, Ameren subpoenaed the following categories of documents from Pekin: (1) a copy of the policy providing coverage to Toft on the date of the accident, (2) any records reflecting coverage for the vehicle and any documents showing any changes of coverage for the vehicle, (3) any documents relating to ownership of the vehicle on the date of the accident, (4) any documents relating to any sale of the vehicle in 2017 or 2018, (5) any photographs or other documents relating to the accident, (6) any statements made by any driver involved in the accident, (7) any statements made by any witness to the accident, (8) any statements, recordings, notes, or

memoranda of any conversations with Toft relating to the accident, and (9) any statements, recordings, notes, or memoranda of any conversations concerning Capps's use of the vehicle. (We note that the record does not contain any information about Pekin's response to this subpoena.)

¶ 15        In August 2021, following discovery, Ameren filed a motion to dismiss Toft from the case, which the trial court allowed.

¶ 16        In September 2021, Ameren filed a motion for summary judgment, attaching (1) Capps's answer to the complaint, (2) an affidavit of James Dooley, the driver of the Ameren truck, and (3) an affidavit of Alan Cunningham, the supervisor of fleet services for Ameren. Attached to Dooley's affidavit were photographs from the accident, and attached to Cunningham's affidavit were copies of invoices Ameren paid for the towing and repair of the truck.

¶ 17        Capps, who was not represented by counsel, did not respond to the motion for summary judgment.

¶ 18        In December 2021, the trial court granted Ameren's motion and entered summary judgment against Capps in the amount of $97,676.66.

¶ 19                         B. The Citation To Discover Assets

¶ 20        In June 2022, Ameren filed a citation to discover assets pursuant to section 2-1402 of the Code (*id.* § 2-1402). The citation notified Pekin of Ameren's judgment against Capps and directed Pekin to appear and be examined concerning the "property or income of or indebtedness due to [Capps]."

¶ 21        1. *Ameren's Subpoena for Deposition of Corporate Representative*

¶ 22        Ameren issued to Pekin a "Subpoena for Deposition of Corporate Representative" pursuant to Illinois Supreme Court Rules 206(a) and 277(e) (eff. Oct. 1, 2021). The subpoena directed Pekin to appear and testify regarding the following topics:

- 4 -

"1. any insurance policies, in which [Capps] has any interest in [*sic*];

2. any insurance policies which provided coverage, on or about December 5, 2017, for a 2002 Ford Focus motor vehicle owned by [Toft], including but not limited to, insurance policy no. 00P671154 held by [Toft]; and

3. available coverage, on or about December 5, 2017, for the 2002 Ford Focus motor vehicle owned by [Toft], including policy no. 00P671154."

The subpoena also directed Pekin to produce at the deposition (1) "any insurance policies, in which [Capps] has any interest in [*sic*]," (2) any insurance policies providing coverage for Toft's vehicle on the date of the accident, (3) any other documents relating to coverage for Toft's vehicle, and (4) "any other documents relating to insurance coverage for [the motor vehicle accident] that involved [Toft's vehicle.]"

¶ 23          2. *Pekin's Motion To Quash Subpoena for Deposition*

¶ 24          In July 2022, Pekin filed a "Motion to Quash Subpoena for Deposition of Corporate Representative." Pekin first acknowledged that Toft's vehicle, which Capps was driving, was covered by a Pekin insurance policy. However, Pekin argued that Capps (1) was a non-permissive driver of the car and (2) had "refused coverage under the only Pekin Insurance Policy potentially involved in this matter, Policy No. 00P671154." Pekin also asserted that Toft had been voluntarily dismissed from the case but, prior to being dismissed, he had provided written answers to discovery identifying policy No. 00P671154 as the only "potentially involved policy." Pekin also claimed that "depositions in this matter were completed which confirmed that [Capps] was not a permissive driver of the vehicle. This fact is not in dispute." Accordingly, Pekin argued that because (1) "the only potentially relevant policy has been identified," (2) Capps has refused coverage under the policy, and (3) Capps was not a permissive driver, "the testimony and documents sought by

[Ameren's] Subpoena for Deposition of Corporate Representative \*\*\* are moot and wholly irrelevant."

¶ 25        Pekin attached to its motion handwritten correspondence from Capps dated June 15, 2020, stating as follows:

> "To Mr. Gordon:
>
> My name is Clarence Capps. I am writing in response to correspondence dated June 5th of 2020, in reference to Claim Number F77568—Michael Toft.
>
> The circumstances which give rise to the claim are not being disputed. [Toft] was not aware that I was driving the vehicle owned by Mr. Toft on December 5, 2017. Even if I were qualified as an insured under Mr. Toft's policy, I am not seeking coverage in relation to the claim. I am not looking to Pekin Insurance for a defense. Analyzing entitlement to coverage is therefore unnecessary.
>
> Thank you for contacting me in relation to this matter.
>
> Sincerely,
>
> Clarence Capps."

(We note that the record does not contain any further information about who "Mr. Gordon" is or how Capps came to write this letter.)

¶ 26        3. *Ameren's Response to Pekin's Motion To Quash Subpoena for Deposition*

¶ 27        In August 2022, Ameren filed a written response to Pekin's motion to quash. Ameren alleged that it "instituted this suit \*\*\* to recover damages it sustained" when Capps drove a Ford Focus insured by Pekin into an Ameren-owned bucket truck. Ameren attached as an exhibit to its response the insurance policy that covered the Ford Focus, Pekin policy No. 00P671154. The policy stated that, in addition to the policy holder, "anyone else is an insured while using with [the

policy holder's] permission a covered auto you own, hire or borrow except [(exceptions that do not apply here)]." (We note that the parties do not dispute that under this clause, an "insured" under the policy includes anyone using the covered auto with the permission of the named insured.) Ameren noted that Pekin did not deny the existence of the policy or its potential applicability, but instead claimed only that the policy did not provide coverage because Capps was not a permissive driver.

¶ 28        Ameren argued that Pekin's motion to quash called for the trial court to make a substantive determination on coverage without allowing Ameren "additional discovery regarding the policy pursuant to Rule 277(e)." Ameren asserted that Capps *was* a permissive driver under the policy and, accordingly, Pekin incorrectly claimed in its motion that there was no dispute that Capps was a non-permissive driver. Ameren argued, "[T]here is in fact a dispute on this question which involves a legal determination for the Court."

¶ 29        Ameren then alleged the following facts, supported by transcripts from the depositions of Toft and Turner, which Ameren attached to its response: (1) Toft gave possession of the vehicle to Turner, his foster daughter, on November 25, 2017; (2) Toft imposed no restrictions on Turner's use of the vehicle; (3) Turner was in a romantic relationship with Capps; (4) on the day of the accident, Capps asked Turner to use the car; (5) "although Turner claims that she said no, she handed over the keys to the vehicle to Capps (allegedly so that he could obtain something from the car)" and "did not make any statements or place any restrictions on his use of the keys"; (6) Turner did not report the vehicle as stolen before she learned of the accident, but attempted to do so after the accident; and (7) the police did not accept Turner's report because she lived with Capps and had handed him the keys.

¶ 30        Ameren then argued that the initial permission rule applied, making Capps a

permissive driver covered by the Pekin policy and extending coverage to Ameren's damages. (We note that "[u]nder the initial permission rule *** once the named insured of an automobile insurance policy has given permission to another to use the car, any subsequent driver is covered as long as that driver did not engage in theft or tortious conversion to gain access to the car." *Founders Insurance Co. v. American Country Insurance Co.*, 366 Ill. App. 3d 64, 71, 851 N.E.2d 120, 126 (2006).)

¶ 31 Ameren also argued that Capp's rejection of coverage did not void Ameren's right to seek the proceeds of the policy because (1) Illinois law makes the general public the beneficiaries of liability policies and (2) those rights vest at the time of the occurrence giving rise to injuries.

¶ 32 Ameren attached as exhibits to its response (1) the complaint, (2) Pekin insurance policy No. 00P671154, (3) the order granting Ameren's motion for summary judgment, (4) the subpoena for deposition of corporate representative, (5) Toft's answer to the complaint, and (6) the depositions of Toft and Turner. Ameren asked the trial court to deny Pekin's motion to quash.

¶ 33                    4. *Ameren's Motion for a Turnover Order*

¶ 34 Also in August 2022, Ameren filed (concurrent with its response to Pekin's motion to quash) a "Motion for Turnover Order," which incorporated by reference its "Response to Motion to Quash Subpoena" and asked the trial court, based on the arguments and evidence in that response, to find that "[(1)] Capps was an insured under the policy's omnibus [(permissive driver)] clause and [(2)] Pekin's Policy No. 00P671154 provides coverage for the accident and Ameren's damages resulting therefrom." Ameren further asked the court to "enter an order, pursuant to Section 2-1402(c) [of the Code] compelling Pekin to deliver to Ameren proceeds under Pekin's Policy No. 00P671154, up to the $300,000 limit identified in the policy, as to satisfy the judgment

in the amount of $97,676.66 plus interest and costs."

¶ 35    Ameren attached as exhibits to its motion (1) the complaint, (2) Pekin insurance policy No. 00P671154, (3) the order granting Ameren's motion for summary judgment, (4) the citation to discover assets and citation notice (5) proof of personal service of the citation to discover assets upon Pekin, (6) proof of service by mail of the citation to discover assets upon Capps, and (7) the subpoena for deposition of corporate representative and notice of deposition.

¶ 36    *5. Pekin's Combined Reply and Response*

¶ 37    Later that month, Pekin filed a "Combined Reply to Plaintiff's Response to Motion to Quash Subpoena for Deposition of Corporate Representative and Response to Plaintiff's Motion for Turnover Order." Pekin argued that its motion to quash should be granted and Ameren's motion for a turnover order should be denied. Specifically, Pekin claimed that the insurance policy did not provide coverage because Capps was not a permissive driver but instead tortiously converted the vehicle.

¶ 38    Pekin asserted the following facts, supported by deposition transcripts: (1) at the time of the collision, Toft had not given Capps permission to use the vehicle; (2) Toft had given Turner permission to use the vehicle; (3) the morning of the collision, Capps arrived at Turner's employment and asked to use the car; (4) Turner responded "no" because she was aware that Capps did not have a driver's license and it was her policy that he not drive any car belonging to her; (5) Capps asked if he could have the keys to get something out of the car; (6) Turner said yes, gave Capps the keys, and returned to work; (7) around lunchtime, Turner went to the parking lot and discovered Capps had taken the car; (8) Turner went to the police station to report the car as stolen; and (9) Capps collided with the Ameren vehicle approximately 3.2 miles from Turner's place of employment.

¶ 39    Pekin asserted that Capps was not represented in the proceedings and did not claim a defense or indemnity from Pekin. Pekin attached the June 2020 correspondence from Capps that it had previously attached to its motion to quash. Pekin further claimed that, after Toft answered written discovery, which confirmed that the Pekin policy was the only insurance policy covering the vehicle involved in the collision, Ameren voluntarily dismissed Toft from the case. Thereafter, Pekin claimed, "With Toft dismissed, and thus no defense counsel remaining in the case, [Ameren] seized the opportunity to take judgment against Capps in the amount of $97,676.66 without meaningful opposition."

¶ 40    Pekin then argued that Ameren's subpoena for deposition and citation to discover assets were "moot and irrelevant." Specifically, Pekin claimed that Ameren admitted it had a copy of the relevant policy and learned through discovery that no additional relevant policies existed. According to Pekin, the policy "speaks for itself," and "no further testimony of the policy language from a corporate representative of Pekin could arguably add any relevant information to this matter."

¶ 41    Pekin also argued that the policy does not provide coverage. Pekin acknowledged that the policy included as "an insured" anyone using the covered auto with permission of the named insured. However, Pekin asserted, "it [was] undisputed that [Capps] was not given permission to drive the car by [Toft]" or anyone else. As a result, Capps was not a permissive driver insured under the policy, and the policy did not provide coverage for the collision. Pekin asserted that the "initial permission rule" was inapplicable when, as here, the car is taken as the result of a theft or a tortious conversion.

¶ 42    Last, Pekin argued that Ameren had not presented any evidence of implied permission because Turner told Capps "no" when he requested to drive the vehicle. Pekin asserted

that she handed him the keys only in relation to his request to retrieve something from the car.

¶ 43    Pekin attached the following exhibits to its combined response and reply: (1) the June 2020 letter from Capps, (2) a portion of Toft's deposition transcript, (3) Turner's deposition transcript, and (4) the traffic crash report.

¶ 44    6. *The Hearing on the Motion To Quash Subpoena and Motion*

*for a Turnover Order*

¶ 45    In September 2022, the trial court conducted a hearing on Pekin's motion to quash and Ameren's motion for a turnover order. The parties did not present any evidence but made arguments that were consistent with their written filings.

¶ 46    At the conclusion of the arguments, the trial court granted Pekin's motion to quash, stating only that it agreed with Pekin that "the policy, in and of itself, speaks for itself and is controlling in this matter." The court then denied Ameren's motion for turnover without further comment. That same day, the court entered a written order stating only that the motion to quash was granted and the motion for turnover was denied.

¶ 47    This appeal followed.

¶ 48    II. ANALYSIS

¶ 49    Ameren appeals, arguing that the trial court erred by (1) granting Pekin's motion to quash and (2) denying Ameren's motion for a turnover order because the facts of record established that Capps was a permissive driver of the covered vehicle.

¶ 50    We disagree and affirm.

¶ 51    A. The Applicable Law

¶ 52    Citations to discover assets are supplementary proceedings meant to "provide a mechanism for a judgment creditor to discover assets of a judgment debtor in order to satisfy an

- 11 -

unpaid judgment." *Kauffman v. Wrenn*, 2015 IL App (2d) 150285, ¶ 23, 46 N.E.3d 805. The purpose of citation proceedings is "to provide an efficient and expeditious process for the discovery of a judgment debtor's income and assets and to compel application of those assets to the payment of the judgment." *Hayward v. Scorte*, 2020 IL App (1st) 190476, ¶ 19, 164 N.E.3d 31.

¶ 53    Rights under an insurance policy may be adjudicated in citation proceedings, and the citation defendant may litigate any proper defense to recovery under the policy. See *Second New Haven Bank v. Kobrite*, 86 Ill. App. 3d 832, 835, 408 N.E.2d 369, 370 (1980) ("[I]nsurance proceeds, although contingent, may be an asset of the debtor to the extent that rights under the policy may be adjudicated in the citation proceedings. [Citation.] In the adjudication, the citation defendant may litigate any proper defense to recovery under the policy.").

¶ 54    Citation proceedings are authorized by section 2-1402 of the Code, which provides, in relevant part, as follows:

> "A judgment creditor *** is entitled to prosecute citations to discover assets for the purposes of examining the judgment debtor or any other person to discover assets or income of the debtor not exempt from the enforcement of the judgment, *** and of compelling the application of non-exempt assets or income discovered toward the payment of the amount due under the judgment." 735 ILCS 5/2-1402(a) (West 2022).

The statute provides that "the procedure for conducting citation proceedings shall be prescribed by rules." *Id.*

¶ 55    The Illinois Supreme Court set forth the procedure for conducting citation proceedings in Illinois Supreme Court Rule 277 (eff. Oct. 1, 2021). Rule 277(a) provides, in

pertinent part, that

> "[a] supplementary proceeding authorized by section 2-1402 \*\*\* may be commenced at any time with respect to a judgment which is subject to enforcement. The proceeding may be against the judgment debtor or any third party the judgment creditor believes has property of or is indebted to the judgment debtor." Ill. S. Ct. R. 277(a) (eff. Oct. 1, 2021).

¶ 56     Rule 277(c) requires that the citation (1) be captioned in the cause in which the judgment was entered; (2) state the date the judgment was entered and amount remaining unsatisfied; (3) "shall require the party to whom it is directed, or if directed to a corporation or partnership, a designated officer or partner thereof, to appear for examination at a time and place to be specified therein \*\*\* concerning the property or income of or indebtedness due to the debtor"; and (4) "may require, upon reasonable specification thereof, the production at the examination of any books, documents, or records in his or its possession or control which have or may contain information concerning the property or income of the debtor." Ill. S. Ct. R. 277(c) (eff. Oct. 1, 2021).

¶ 57     Rule 277(e) provides that the examination shall be conducted before the trial court but permits the judgment creditor to elect to conduct "all or part of the hearing by deposition as provided by the rules of this court for discovery depositions." Ill. S. Ct. R. 277(e) (eff. Oct. 1, 2021). The judgment creditor may elect to conduct the examination by deposition by "so indicating in the citation or subpoena served or by requesting the court to so order." *Id.* However,

> "[t]he court at any time may terminate the deposition or order that proceedings be conducted before the court or officer designated by the court, and otherwise control and direct the proceeding to the end that the rights and interests of all parties and

persons involved may be protected and harassment avoided." *Id.*

¶ 58       Supplementary proceedings under section 2-1402 are construed liberally (1) "to provide discovery of a debtor's assets and income" and (2) "to vest the trial court with broad power to apply discovered property to satisfy a judgment." *Kauffman*, 2015 IL App (2d) 150285, ¶ 23. "The only relevant inquiries in a supplementary proceeding are (1) whether the judgment debtor possesses assets that should be applied to satisfy the judgment, and (2) whether a third party is holding assets of the judgment debtor that should be applied to satisfy the judgment." *Id.* ¶ 26. "The judgment creditor has the burden of showing that the citation respondent has assets of the judgment debtor." *Id.*

¶ 59       An appellate court reviews *de novo* a trial court's ruling in a citation proceeding when the trial court did not conduct an evidentiary hearing or make factual findings. See *Dowling v. Chicago Options Associates*, 226 Ill. 2d 277, 285, 875 N.E.2d 1012, 1017 (2007).

¶ 60                                    B. This Case

¶ 61       1. *The Trial Court's Order Granting Pekin's Motion To Quash Ameren's*
                 *Subpoena for Deposition of Corporate Representative*

¶ 62       Ameren argues that the trial court erred by quashing the subpoena for records and the testimony of Pekin's corporate representative. Ameren contends that, in doing so, the court denied Ameren discovery to which it was entitled under a citation proceeding.

¶ 63       Ameren's position on appeal, however, is inconsistent with the position it took before the trial court. When Pekin filed its motion to quash, Ameren filed, with its response, a concurrent motion for a turnover order, which asked the trial court to make a substantive determination on coverage. (We also note that Ameren noticed its motion for turnover order for hearing on the same date and time that Pekin had previously noticed its motion to quash for

hearing.)

¶ 64 Counsel for Ameren provided an explanation for her strategy at the hearing when she stated that, "[because in its motion to quash] Pekin did not deny the existence of the policy or its applicability, we [(Ameren)] filed our motion for turnover order." Counsel for Ameren then proceeded to argue the substantive coverage issues instead of the discovery issue. Counsel for Pekin responded by also addressing the substantive coverage issues instead of the discovery issues.

¶ 65 After the parties concluded their arguments and fielded questions from the bench, the trial court asked the parties to "quick[ly]" address the motion to quash. Counsel for Pekin argued that (1) the only policy that was arguably relevant had been provided to Ameren and (2) whether or not the policy provided coverage was "dependent upon the language in the four corners of that policy and the facts in this case, neither of which can the deposition testimony of any corporate representative of [Pekin] change."

¶ 66 Ameren responded that (1) the rules governing citations to discover assets entitle it to discovery and (2) Pekin's argument that discovery was irrelevant was "a premature question, as it's based on a coverage determination." Counsel continued as follows:

"However, we do agree that there's sufficient evidence here in the record for the Court to determine that question.

If the Court disagrees, then additional discovery may be needed. But, if the Court agrees that, based on the record, a determination can be made, then that will render the motion to quash." (We note that counsel did not complete her sentence, but we can infer from the context that she meant to end her sentence with the word "moot.")

¶ 67 Ameren's comments at the hearing are entirely at odds with its argument on appeal

that the trial court erred by denying Ameren discovery. In the trial court, Ameren took the position that further discovery was not necessary. The court agreed. Ameren cannot now claim that the court erred by denying Ameren discovery.

¶ 68    Moreover, Ameren chose the procedural vehicle of a citation to discover assets to enforce a judgment instead of filing a declaratory judgment action. This was Ameren's right, but by making this strategic choice, Ameren chose a proceeding that expressly vested discretion with the trial court to "*at any time* *** terminate the deposition *** and otherwise *control and direct the proceeding* to the end that the rights and interests of all parties and persons involved may be protected and harassment avoided." (Emphases added.) Ill. S. Ct. R. 277(e) (eff. Oct. 1, 2021). The only limitation on the court's discretion to regulate discovery and control the proceeding was to ensure that the rights of the parties were protected, and Ameren has not demonstrated that by granting Pekin's motion to quash the court failed to protect any rights of Ameren.

¶ 69    As we have explained, even Ameren agreed at the hearing that discovery was unnecessary to decide the ultimate issue in the citation proceeding. We agree with Pekin that "[n]ow, after receiving an adverse coverage decision, [Ameren] cannot throw up its arms and claim that additional discovery was needed prior to a ruling upon coverage when it was the party requesting such a ruling in the first place."

¶ 70    Additionally, we agree with the trial court's determination that it had sufficient information before it—namely, (1) the applicable insurance policy and (2) the relevant deposition transcripts—to determine whether the policy provided coverage for the accident caused by Capps. Accordingly, the court did not err by granting Pekin's motion to quash.

¶ 71    2. *The Trial Court's Denial of Ameren's Motion for a Turnover Order*

¶ 72    Ameren also argues that the trial court erred by denying its motion for a turnover

order because coverage extended to Capps as a permissive driver of the Ford Focus that was insured by Pekin. Pekin responds that because Capps was not a permissive driver, the policy does not provide coverage.

¶ 73    The parties agree that (1) the Pekin policy's "omnibus" or "permissive driver" clause extends coverage to anyone using the auto with permission of the named insured; (2) Toft gave permission to Turner to use the vehicle; (3) when Capps initially asked Turner if he could drive the car, she said "no"; (4) when Capps asked Turner if he could retrieve something from the car, she handed him the keys without saying anything further; and (5) Capps took the car and collided with the Ameren truck.

¶ 74    The parties also agree that Illinois follows the "initial permission rule," under which, "if the named insured has initially given permission to another to use the insured vehicle, a deviation from the authorized use does not serve to terminate the permission." *Maryland Casualty Co. v. Iowa National Mutual Insurance Co.*, 54 Ill. 2d 333, 341, 297 N.E.2d 163, 167 (1973). The Illinois Supreme Court expounded on the initial permission rule and wrote the following:

> " 'When the named insured has initially once given permission to another person to use his motor vehicle but that person deviates from the permission granted, Illinois follows the so-called initial permission rule to the effect that the user need only to have received permission to take the vehicle in the first instance, and any use while it remains in his possession is with 'permission', under the omnibus clause, though that use may be for a purpose not contemplated by the named insured when he parted with possession of the vehicle; if the original taking by the user is with the named insured's consent, every act of the user subsequent thereto while he

- 17 -

is driving the vehicle is with the named insured's permission so far as the omnibus clause is concerned, assuming there is no termination of permission; a deviation from the permission is immaterial; the only essential thing is that permission be given in the first instance; the rule is based on the theory that the insurance contract is as much for the benefit of the public as for the insured, and that it is undesirable to permit litigation as to the details of the permission and use[.]' " *Id* at 341-342. (quoting *Konrad v. Hartford Accident & Indemnity Co.*, 11 Ill. App. 2d 503, 514-15, 137 N.E.2d 855, 861 (1956)).

¶ 75 The parties disagree, however, on the application of the initial permission doctrine to this case. Ameren contends that "[when] Toft granted Turner permission to use the vehicle and did not revoke that permission at any time before the accident," "coverage was fixed *** and extended to Capps' use of the vehicle even without further proof of permission."

¶ 76 Pekin argues that Ameren ignores an "obvious exception" to the initial permission rule that is present in this case—namely, that the initial permission rule does not apply when the car is taken as a result of theft or tortious conversion. See *Western State Mutual Insurance Co. v. Verucchi*, 66 Ill. 2d 527, 363 N.E.2d 826 (1977).

¶ 77 Ameren replies that "the evidence in the record [(Turner's deposition testimony)] does not support Pekin's position that Capps was an unauthorized driver." Ameren asserts that when Turner handed Capps the keys to the car (after she had told him he could not drive it and he thereafter asked if he could retrieve something from it), she did not reiterate to him that he could not drive the car. Ameren contends that under these circumstances, Turner gave Capps "implied permission" to drive the car.

¶ 78 We disagree with Ameren.

¶ 79       The parties cite various cases applying the initial permission rule in their briefs. We conclude that the instant case is most similar to *Woodall v. Booras*, 182 Ill. App. 3d 1096, 538 N.E.2d 1263 (1989), in which the Second District Appellate Court considered the "tortious conversion" exception to the "initial permission rule."

¶ 80       In *Woodall*, the named insured had given permission to his son, Alanis Jr., to use the insured's pickup truck. *Id.* at 1098. Alanis Jr. picked up his friend, Booras, and, after making various stops, they ended up at the home of a third friend for a cookout. *Id.* Throughout the afternoon, Booras had been eager to pick up a girl he had met. *Id.* Alanis Jr. told Booras he would take him to get the girl when Alanis Jr. was done fishing. *Id.* Booras mentioned going to get the girl two or three more times. *Id.* At one point, Booras even got into the truck, and Alanis Jr. told him to get out, remarking again that he would take Booras to get the girl as soon as Alanis Jr. was done fishing. *Id.* Shortly thereafter, Booras drove off in the pickup truck, and Alanis Jr. ran after the truck. *Id.* at 1099. About 20 to 30 minutes later, Alanis Jr. heard sirens, which turned out to be an accident involving Booras and the truck. *Id.*

¶ 81       The appellate court concluded that Booras was not a permissive driver to whom coverage extended under the policy. *Id.* at 1103. The court observed that "tortious conversion" is " 'any unauthorized act by which an owner is deprived of his property permanently or indefinitely, or the exercise of dominion over property inconsistent with the rights of the owner.' " *Id.* (quoting *Verucchi*, 66 Ill. 2d at 531). Applying that definition to the circumstances of the case, the court further stated as follows:

> "Booras was unauthorized by either the owner or first permittee; his act deprived the owner and first permittee of the pickup truck for an indefinite time, and he clearly exercised dominion over the pickup truck inconsistent with the rights of the

- 19 -

owner and first permittee. We thus find that the conduct of Booras amounted to substantial interference and deprivation of the owner's rights in his vehicle." *Id.*

¶ 82    The present case is an even stronger example of lack of permission or tortious conversion because Turner *explicitly* denied Capps permission to drive the car. Turner testified at her deposition that Capps asked to use her car and she said no. Turner testified that she never let Capps drive her car because he did not have a valid driver's license. Capps then asked if he could get something out of the car, and Turner gave him the keys. She had previously given him the keys to retrieve his belongings, and on those occasions, he had never taken the car.

¶ 83    Ameren argues that implied permission exists "[when] there is an inference or circumstance arising out of a course of conduct or a relationship between the parties whereby there is mutual acquiescence or lack of objection under circumstances that generally would indicate permission." *Standard Mutual Insurance Co. v. Sentry Insurance of Illinois*, 146 Ill. App. 3d 905, 909, 497 N.E.2d 476, 479 (1986). However, in *Standard Mutual*, the appellate court concluded that a house sitter who took a spare set of car keys kept in a dresser drawer to drive a car while the owners were in Florida did *not* have implied permission to use the car. *Id.* at 907-09. And in the present case, Turner did not acquiesce or fail to object to Capps's request to drive the car; Turner said no to that request.

¶ 84    Ameren also cites *Hall v. Illinois National Insurance Co.*, 34 Ill. App. 2d 167, 170, 180 N.E.2d 695 (1962), for the proposition that merely supplying an individual with a set of keys to a vehicle constitutes tacit permission to use the vehicle. In *Hall*, the named insured had given his wife her own set of keys to his new car. *Id.* at 169. The following year, the husband and wife separated, but the wife continued to use the car "more than [the named insured] did." *Id.* at 169-70. This court concluded that *Hall* involved a clear case of permissive use, noting that the husband

granted tacit permission to use the car merely by handing his wife the keys, and that permission continued "until revoked by demanding the keys back or forbidding the use of the car or by some other act that indicates permission is withdrawn." *Id.* at 170.

¶ 85 *Hall* is distinguishable. Turner did not merely give Capps the keys to her car without saying anything. She gave him the keys *after* telling him he could not drive it and in response to his request to retrieve something from it. Turner reasonably believed, based on past conduct, that Capps would only retrieve his items and not drive the car.

¶ 86 The ultimate issue in this case is whether Capps was a permissive driver covered by the Pekin policy. This question could be determined by (1) the language of the policy and (2) Turner's deposition testimony, which both parties attached to their filings. Importantly, no party argued that Turner's testimony was not credible; to the contrary, they argued only that her testimony supported different legal conclusions. Specifically, Pekin argued that Turner's testimony established that she expressly denied Capps permission to drive her car. Ameren argued that the same testimony established that Turner gave Capps implied permission to use her car. The trial court was called upon to decide the issue of coverage based on its interpretation of Turner's deposition testimony. Based upon the evidence submitted to the court and the applicable law regarding the initial permission rule, we conclude that the court correctly denied Ameren's motion for a turnover order because Capps was not a permissive driver covered by the policy.

¶ 87 Because we have concluded that Capps was not covered by the policy, we do not need to address Ameren's argument that Capps could not voluntarily decline coverage.

¶ 88                                      III. CONCLUSION

¶ 89 For the reasons stated, we conclude that the trial court did not err by (1) granting Pekin's motion to quash and (2) denying Ameren's motion for a turnover order.

¶ 90    Affirmed.